# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CALEB L. MCGILLVARY,<br><br>                    Plaintiff,<br><br>          v.<br><br>NICHOLAS SCUTARI, *et al.*<br><br>                    Defendants. | Case No. 1:23-cv-22605 (JMY)<br><br>Return Date: July 22, 2024 |

---

### DEFENDANT FMERA'S BRIEF IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION FOR AD INTERIM RELIEF UNDER N.J.C.R. 4:69-3 OR FOR A PRELIMINARY INJUNCTION UNDER RULE 65

---

On the Brief and Of Counsel:
    Roy Viola, Esq.


On the Brief:
    Justin Miklacki, Esq.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 2

LEGAL ARGUMENT ...................................................................................................... 8

               i. ............................................................................................................. 8

               ii. ............................................................................................................ 9

               iii. ......................................................................................................... 15

               iv. ......................................................................................................... 18

               v. .......................................................................................................... 20

               CONCLUSION ............................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) ...................................................................................................................13

*Amidax Trading Grp. v. SWIFT SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)) ..................................15

*Arafa v. Health Express Corp.*, 243 N.J. 147 (2020) ....................................................................................................................

*Boardman v. Pacific Seafood Group*, 822 F.3d 1011 (9th Cir. 2016 ............................................14

*Bonner v. Justia Inc.*, No. 318CV9187 (PGS)(LHG), 2019 WL 3892858, at 3 (D.N.J. Aug. 19, 2019) ..............................................................................................................14

*CTIA - The Wireless Association v. City of Berkeley, California*, 928 F.3d 832 (9th Cir. 2019) ....................................................................................................................14

*Corp. Synergies Grp., LLC v. Andrews*, 775 F. App'x 54, 60 (3d Cir. 2019) .............................20

*Coast to Coast Entm't, LLC v. Coastal Amusements, Inc.*, No. 05-3977, 2005 WL 7979273, (D.N.J. Nov. 7, 2005) ......................................................................................9

*Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) ......................................15

*Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) .....................20

*Gilliam v. United States Dep't of Agric.*, 486 F. Supp. 3d 856, 882 (E.D. Pa. 2020) ...................19

*Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 441, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974) ...........................................................................................20

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 804 (3d Cir.1989)....................18

*Kim v. Hanlon*, 99 F.4th 140 (3d Cir. 2024) ...............................................................................10

*Los Angeles v. Lyons,* 461 U.S. 95, 103, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) .......................19

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).................................................................................................................16

*Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997)...................8

*Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013)...................8

*Pub. Int. Legal Found. v. Boockvar*, 495 F. Supp. 3d 354, 358 (M.D. Pa. 2020)…………………8

*Perry v. Gold & Laine, P.C.*, 371 F.Supp. 2d 622, 626 (D.N.J. 2005).10 BA_Cite_33EB2B_000035

*Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980)......................................................................9

*Oburn v. Shapp*, 521 F.2d 142 (3d Cir. 1975) ...............................................................................13

*O'Shea v. Littleton,* 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974))............................11

*Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011) ............................................................15

*Schneider v. Colegio de Abogados de Puerto Rico*, 187 F.3d 30, 57 (1st Cir. 1999) ..................21

*Sims v. Greene*, 161 F.2d 87, 88 (3d Cir. 1947)…………………………………………………20

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016) .................16

*Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc.*, 335 F.3d 235, 240 (3d Cir. 2003). .......................................................................................................................................19

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ...........................................................14

*Summers v. Earth Island Inst.*, *555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).* .......................................................................................................................................16

*TransUnion LLC v. Ramirez*, U.S. 141 S. Ct. 2190, 2203, 210 L.Ed.2d 568 (2021). ..................15

*Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080, 198 L. Ed. 2d 643 (2017) ...........................................................................................................................14

*United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976).................................9

*Winter v. Nat. Res. Def. Council, Inc.*, *555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008)* ...........................................................................................................14

**Statutes**

Fed. R. Civ. P. 65(c) ....................................................................................................................18

## PRELIMINARY STATEMENT

Plaintiff Caleb L. McGillvary ("Plaintiff") brings forth a petition for ad interim relief, or in the alternative a preliminary injunction under Fed. R. Civ. P. 65 based on an incoherent and unintelligible complaint grounded with incurable deficiencies. He seeks to void an enormous transaction that was executed over a period of years and meticulously evaluated pursuant to a comprehensive administrative framework.  Plaintiff's assertions involve circular arguments and innuendo that require the Court to assume facts that Plaintiff has not even attempted to prove. Plaintiff's reading of various statutes, regulations and cases, whether intentional or not, create incomplete and misleading assertions that, when taken in full view do not provide support for any of the plaintiff's requests for relief. More importantly, he failed to appreciate the comprehensive regulatory structure under which the Fort Monmouth Economic Revitalization Authority ("FMERA") operates; his motion contains multiple inaccuracies that lead to fatally-incorrect assertions on fundamental elements of his motion.

Plaintiff's assertions are incomprehensible and his motion fails to offer a single exhibit supporting his contentions, a procedural deficiency that warrants denial of the petition *ab initio*. In short, it is respectfully requested that Plaintiff's motion is deficient in both form and substance, requiring denial with prejudice.

1

## STATEMENT OF FACTS

1.     As of the date of this filing, Netflix has not been served with either plaintiff's Complaint or Amended Complaint. As such, the critical party to this transaction has not been properly sued in this case and cannot set forth its position;

2.     FMERA is a New Jersey government authority created by the New Jersey legislature pursuant to authorization under P.L. 2010, c. 51 (N.J.S.A. 52:27I-18 et seq);

3.     The scope of FMERA's authority and mandate are governed by its enabling Act, N.J.S.A. 52:27I-18 to 52:27I-41 and its rules, New Jersey Administrative Code, N.J.A.C. 19:31C–1.1 to 19:31C-3.28 ("regulations");

4.     FMERA's general mission pursuant to N.J.S.A. 52:27I-24 is planning and implementing the redevelopment and reuse of Fort Monmouth, formerly operated as a United States Army Installation.

5.     The sale of real property is governed by FMERA's regulations at N.J.A.C. 19:31C-2.1 et seq.  As set forth under N.J.A.C. 19:31C-2.3 and 2.5, FMERA may make property available for purchase either through the "Offer to purchase process" or the "Seal bid process."

6.     When utilizing the Offer to purchase process, the FMERA Board must approve an identified parcel of land for sale under a public procurement process that may use price and other factors for consideration, and FMERA may negotiate terms of the sale that are in the best interest of FMERA and the redevelopment plans for Fort Monmouth.  N.J.A.C. 19:31C-2.5(a); -2.5; -2.15(b); -2.17(a).

7.     At all stages during the Mega Parcel procurement process, FMERA ensured that the regulatory requirements were followed strictly.

2

8.      On July 21, 2021, the FMERA Board first approved the issuance of a Request for Offers to Purchase ("2021 RFOTP") under the offers to purchase process for a large parcel of the Fort Monmouth property, comprising roughly 289 acres in the municipalities of Eatontown and Oceanport, known as the "Mega Parcel."  (See July 21, 2021, Request for Offer to Purchase, **Exhibit A**);

9.      The FMERA Board resolution approving the 2021 RFOTP identified FMERA's strong interest in bolstering the innovation economy to create more and better jobs locally, as well as throughout the State, and to further revitalize Fort Monmouth.

10.     The July 21, 2021, Mega Parcel RFOTP Resolution and Memo stated the FMERA Board would accept alternate uses to the Mega Parcel so long as Potential Purchasers could demonstrate how the proposal achieves the highest and best use of the property.

11.     Additionally, the July 21, 2021, Mega Parcel RFOTP Resolution and Memo permitted a wholly commercial development, so long as the alternate locations for future residential affordable housing units, including supportive housing required under FMERA's agreement with U.S. Department of Housing and Urban Development, were identified in a later Reuse Plan amendment within the Fort.

12.     On October 15, 2021, the 2021 RFOTP was issued to the public.

13.     Over the next few months, three addenda to the 2021 RFOTP were issued by FMERA staff.

14.      In January of 2022, the FMERA Board approved termination of the initial 2021 RFOTP and authorized the use of the Request for Offers to Purchase process to re-issue  a new Mega Parcel, now consisting of 292 acres, the terms of the approval remained

3

substantially similar to the prior approval except for inclusion of a $3 million relocation fee (as the FMERA building was no longer being leased) and the three acre Bowling Alley parcel was now available to be included as additional acreage.

15.     On March 8, 2022, FMERA issued the new Request for Offers to Purchase for the Sale of Real Property ("2022 RFOTP");

16.     The requirements of the 2022 RFOTP <u>did not</u> mandate the development of residential units, but instead required that <u>if</u> residential development was part of the offer, then the residential affordable housing units must be part of the onsite plan. N.J.A.C. 19:31C-3.23(b)

17.     The 2022 RFOTP explicitly stated that the alternative uses set forth in the RFOTP were "subject to a separate approval by the FMERA Board, in its sole discretion, in accordance with the Land Use Rules" and therefore subject to a future Reuse Plan Amendment.

18.     The Mega Parcel was appraised by a licensed professional appraiser at $55.4 million (See the 2022 FMERA RFOTP, dated March 8, 2022, **Exhibit B**).

19.     FMERA staff issued five addenda to the 2022 RFOTP and proposals were due on June 6, 2022.  FMERA received four proposals.

20.     The proposals were evaluated for responsiveness and compliant proposals were independently scored by the evaluation committee, pursuant to N.J.A.C. 19:31C-2.14, resulting in Netflix's proposal receiving the highest score.

21.     Following identification of the highest scored offer, FMERA and Netflix entered into negotiations pursuant to N.J.A.C. 19:31C-2.15(b) resulting in a Purchase and Sale Agreement and Redevelopment Agreement ("PSARA").

22.     On December 21, 2022, the FMERA Board approved the adoption of the PSARA with Netflix, Inc. for the Mega Parcel in Eatontown and Oceanport.

23.     On January 10, 2023, FMERA issued a notice of intent to award to Netflix and the remaining unsuccessful bidders in accordance with N.J.A.C. 19:31C-2.17(e).

24.     The PSARA was executed on January 13, 2023.

25.     Plaintiff did not file an appeal or objection to the RFOTP award or the approval for the PSARA despite the fact that he had an opportunity to do so within 45 days as set forth by Rule 2:4-1.

26.     Pursuant to the terms of the PSARA, Netflix will pay Forty-Seven Million ($47,000,000) Dollars for the Mega Parcel. Additionally, Netflix agreed to pay a utility contribution of Five Million ($5,000,000.00) Dollars, and the FMERA office relocation fee of Three Million ($3,000,000.00) Dollars. The Total Amount due at Closing shall be Fifty-Five Million ($55,000,000.00) Dollars. (See PSARA, **Exhibit C**).

27.     Under the PSARA, Netflix has committed to build a sustainable and integrated film studio campus that will consist of the construction of twelve sound stages and the buildout out of associated improvements and uses customary and incidental to the principal film use, including but not limited to mill space, production support buildings, office spaces, commissary, basecamps, backlots, swim tanks, consumer experience centers, theaters, and visitor centers.

28.     Under the PSARA, Netflix's total Capital Investment is estimated at Eight Hundred and Forty-Eight Million ($848,000,000) Dollars which shall be allocated between Phase 1 representing Eight Hundred Six Million ($806,000,000) Dollars of investment and

5

Phase 2 representing Forty-Two Million ($42,000,000) Dollars of investment in furtherance of the Redevelopment Project. (See **Exhibit C**).

29.     Under the PSARA, Netflix's investment in furtherance of the Redevelopment Project was estimated to contribute Three Thousand Five Hundred and Twenty-Eight (3,528) full-time equivalent jobs to enhance New Jersey employment opportunities.

30.     Plaintiff contends, without support, that the sales price to be paid by Netflix is well below market.  This is inaccurate as the minimum bid for both RFOTPs was based on appraisal by a professional licensed appraiser.

31.     Since executing the PSARA, Netflix has completed its due diligence.

32.     Staff drafted Reuse Plan Amendment #20 for FMERA's Board consideration as set forth in the 2022 RFOTP and detailed in Section 7(f) of the PSARA and in conformance with the process set forth in N.J.A.C 19:31C-3.27(c).

33.     On October 25, 2023, FMERA's Board authorized the transmittal of Reuse Plan Amendment #20 to the Boroughs for public comment pursuant to N.J.A.C. 19:31C-27(c)(6).

34.     Reuse Plan Amendment #20 permitted the construction of Motion Picture, Television, and Broadcast Studios consisting of nine development zones within the Mega Parcel and also identified the locations of three unrelated parcels for residential affordable housing units: Development Zone 10 - including 62 affordable housing units; Development Zone 11 – including 25 supportive housing units, and Development Zone 12 – including 24 affordable housing units.

35.      Reuse Plan Amendment #20, was transmitted to the local municipalities (Tinton Falls, Oceanport and Eatontown) for a 45-day Public Comment period starting on November 6, 2023.  Responses to said Amendment were therefore due on December 20, 2023;

36.     After comments were received from the Boroughs, FMERA staff reviewed the report and prepared an analysis proposing reasons for accepting or not accepting the comments from the Boroughs as required under N.J.A.C. 19:31C-3.27(c)(8).

37.     The Boroughs did not provide FMERA staff with any written objections to Reuse Plan Amendment #20 received from the Plaintiff during their public comment period.

38.     On February 21, 2024, the FMERA Board adopted Reuse Plan Amendment #20;

39.     On March 7, 2024, the Governor's Veto Period expired as it related to the FMERA Board's approval of Reuse Plan Amendment #20;

40.     On July 10, 2024, FMERA issued a Mandatory Conceptual Review Letter (MCR) for Phase 1A of the Netflix project.  This MCR was based on an evaluation of the project's conformity with Reuse Plan Amendment #20 and is the first approval milestone as Netflix pursues all approvals in anticipation of closing on the Mega parcel.

41. Defendant Tracy Buckley is a former member of the FMERA board;

42. Defendant Lillian Burry is a former member of the FMERA board;

43. Defendant Regina McGrade is FMERA's Administrative Manager;

44. Defendant Kara Kopach is FMERA's current Executive Director;

45. Defendant Steve Gallo is FMERA board member who has not been served with the Complaint or Amended Complaint; he does not waive any objections or defenses to plaintiff's failure to properly serve him;

46. Defendant Jorge Santos is a former FMERA board member who has not been served with the Complaint or Amended Complaint; he does not waive any objections or defenses to plaintiff's failure to properly serve him;

7

47. Defendant Jamera Sirmans is a FMERA board member who has not been served with the Complaint or Amended Complaint; she does not waive any objections or defenses to plaintiff's failure to properly serve her;

48. Defendant Bruce Steadman is the former FMERA Executive Director who has not been served with the Complaint or Amended Complaint; he does not waive any objections or defenses to plaintiff's failure to properly serve him;

49. Defendant Anthony Talerico, Jr. is a current member of the FMERA board;

50. Defendant John F. Coffey II, is a former member of the FMERA board;

## LEGAL ARGUMENT

### POINT I

### PLAINTIFF'S MOTION IS COMPLETELY DEVOID OF A SINGLE EHIIBIT SUPPORTING HIS CLAIMS AND MUST BE DISMSSED ON THAT BASIS ALONE

Plaintiff's petition is unsupported by a single exhibit other than his unverified Complaint, which is nothing more than a series of assertions; he provides no evidence that demonstrates his allegations are anything more than that – bare allegations. There is not any proof offered by plaintiff to establish any of the accusations in the rambling Complaint and, more importantly, no exhibits to support the proffered motion.

A preliminary injunction "should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997).  Plaintiff must bear the "particularly heavy" burden of demonstrating a right to relief that is "indisputably clear." *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013), *Pub. Int. Legal Found. v. Boockvar*, 495 F. Supp. 3d 354, 358 (M.D. Pa. 2020).

8

When a preliminary injunction is directed not merely at preserving the status quo but, as in this case, at providing mandatory relief, the burden on the moving party is particularly heavy. *United States v. Spectro Foods Corp.*, 544 F.2d 1175, 1181 (3d Cir. 1976), *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980). An injunction is mandatory if the injunction will either (1) 'alter the status quo by commanding some positive act' or (2) provide the moving party with 'substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.' *Coast to Coast Entm't, LLC v. Coastal Amusements, Inc.*, No. 05-3977, 2005 WL 7979273, (D.N.J. Nov. 7, 2005), *Pub. Int. Legal Found. v. Boockvar*, 495 F. Supp. 3d 354, 358 (M.D. Pa. 2020).

Given this heightened burden placed on plaintiff, the failure to offer so much as a single document is fatal and the motion should be denied with prejudice on that basis alone.

## POINT II

### PLAINTIFF CANNOT ESTABLISH ANY OF THE PRONGS REQUIRED TO SEEK INJUNCTIVE RELIEF.

A party seeking a preliminary injunction must establish that he is 1) likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008).* In short, plaintiff's petition fails on each and every prong and the motion must be denied.

**A. Plaintiff is Unlikely to Succeed on the Merits.**

The first two prongs in the preliminary injunction analysis, likelihood of success on the

merits and irreparable harm, are gateway factors, and courts typically only consider the remaining two prongs, balance of the equities and public interest, if these gateway factors are met. *Kim v. Hanlon*, 99 F.4th 140 (3d Cir. 2024). Over and above the showing required to maintain the status quo, to obtain mandatory injunctive relief, a plaintiff must show a substantial likelihood of success on the merits and that one's right to relief is indisputably clear. *Id.* While courts accept factual allegations as true, they "will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations." *See Perry v. Gold & Laine, P.C.*, 371 F.Supp. 2d 622, 626 (D.N.J. 2005).

Plaintiff's motion for injunctive relief is nothing more than a series of allegations. Plaintiff's unsupported petition to this Court seeks to stop a transaction that was lawfully contracted for more than a year before any objections were made and both parties have expended significant time and resources in furtherance of closing. The sale of the Mega-Parcel to Netflix was negotiated in good faith and in full compliance with the regulations governing the conduct of FMERA operations. As Kara Kopach, FMERA's Executive Director, articulates in detail in her supporting certification, FMERA's process in determining the future use of Fort Monmouth was steadfastly followed. The Offer to Purchase process was followed strictly.

Plaintiff's assertions involve circular arguments and innuendo that require the reader to assume facts that plaintiff has not even attempted to prove.  Among the most egregious involve the arguments focusing on affordable housing.  As Ms. Kopach details in paragraphs 10-17, affordable housing was not a required component of the Mega Parcel RFOTP and would only be required on the Mega Parcel if residential housing was contemplated in that proposal.  The Netflix offer did not envision housing of any kind, as stated in Ms. Kopach's certification.  This did not mean that affordable housing was not mandated; rather under the terms of the RFOTP it required

10

that the location of affordable housing outside the Mega Parcel boundaries be identified in Reuse Plan Amendment #20.   Without ascribing motive to plaintiff's factual omission, it clearly misrepresents the requirements relating to affordable housing.

Finally, plaintiff's reading of various statutes, regulations and cases, whether intentional or not, creates incomplete and misleading assertions that, when taken in full view do not add up.  He has failed to even allege how he has standing to dispute the transaction or how he would somehow be irreparably damaged if the sale is completed. As is clear, Plaintiff's motion is unlikely to succeed on the merits.

**B. Plaintiff Cannot Show Irreparable Harm.**

Plaintiffs seeking preliminary relief must demonstrate that irreparable injury is *likely* in the absence of an injunction. *Los Angeles v. Lyons,* 461 U.S. 95, 103, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); *Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 441, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *O'Shea v. Littleton,* 414 U.S. 488, 502, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974); see also 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948.1, p. 139 (2d ed.1995) (hereinafter Wright & Miller) (applicant must demonstrate that in the absence of a preliminary injunction, "the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered"); *id.*, at 154 – 155, 94 S.Ct. 669 ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury"). Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [the Court's] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997) (*per curiam*) *Winter v. Nat. Res. Def. Council, Inc. at* 375–76.

Here, Plaintiff's complaint does not make the requisite showing that he will be irreparably harmed in the absence of injunctive relief. Plaintiff's complaint is comprised of an incomprehensible set of allegations with no facts to support any cause of action against the FMERA defendant. These series of claims lack credibility and substance, as they are based on a conspiracy theory and rely heavily on conjecture. The plaintiff has no discernable connection to the sale of the state-owned land. Not only has the plaintiff failed to specify any harm he would suffer if the sale of land goes through, but he has also neglected to provide any basis for such harm. The plaintiff's inability to articulate how the land sale affects him provides strong evidence that he is unable to prove the necessary element of irreparable harm in the absence of injunctive relief. Accordingly, Plaintiff falls short in establishing the second prong in the preliminary injunction analysis and his motion should be denied.

Plaintiff apparently seeks the termination of the specific sale to Netflix, which would necessarily require the voiding of FMERA's approval of the Reuse Plan Amendment #20.  His motion makes no effort whatsoever to dispute the painstaking process that was required by FMERA's enabling Act and regulations.  FMERA followed the regulations to the letter at each stage of this process, including scoring of viable offers submitted by parties, negotiations with Netflix once their offer resulted in the highest scored offer and execution of the PSARA, which sets forth all of Netflix's significant obligations in the development of the Mega Parcel.  Similarly, for the Plan Amendment #20 adoption process, FMERA followed its regulations by drafting and submitting the plan amendment to the Board, transmitting it to the Boroughs for comment, and by reply to and submitting for adoption the final version of Reuse Plan Amendment #20 to the FMERA Board.

**C. The Balance of Equities Test Fails**

A preliminary injunction is an extraordinary remedy never awarded as of right; in each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter v. Nat. Res. Def. Council*, at 376. A party moving for preliminary injunctive relief not only has the burden of showing reasonable probability of eventual success and that movant will be irreparably injured pendente lite if relief is not granted, but the district court should take into account, when relevant, possibility of harm to other interested persons from grant or denial of the injunction, and the public interest. *Oburn v. Shapp*, 521 F.2d 142 (3d Cir. 1975), *holding modified by Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994).

In considering where public interest lies, on motion for temporary injunctive relief, it is essential to evaluate possible effects upon the public from the grant or denial of injunctive relief. Here, the plaintiff seeks to disrupt a substantial transaction in furtherance of a redevelopment project estimated at eight hundred and forty-eight million dollars ($848,000,000.00). Plaintiff contends, without support, that the sales price to be paid by Netflix is substantially below market value. This claim is unequivocally wrong and wholly unsupported by any authoritative source other than the plaintiff's conjecture. The Mega Parcel was appraised by a professional licensed appraiser for $55. 4 Million Dollars. (See **Exhibit B**). Dismissing this flatly wrong allegation, the Court must consider the broad implications for the people of New Jersey, who stand to benefit significantly from the transaction and the construction of a state-of-the-art production studio.

Public policy arguments, if any, should be scrutinized for their validity and support. Turning to the specifics of this case, the plaintiff's lack of effort in assessing the potential harm to parties involved in the sale is concerning. The economic impact of Netflix's $848,000,000.00

capital commitment cannot be overlooked or overstated, as the anticipated economic activity generated by Netflix's studio promises to be substantial. Considering that Netflix's purchase commitment aligns with the appraised value of the Mega Parcel, it is clear that the balance of equities does not favor the plaintiff, whose motivation seems rooted in a personal vendetta against Netflix for a matter wholly unrelated to the sale of the Mega Parcel.

**D. An Injunction Would Not Be in the Public's Interest.**

Plaintiffs seeking preliminary relief must establish, among other factors, that an injunction is in the public interest. *Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080, 198 L. Ed. 2d 643 (2017) (quoting *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). The public interest analysis for the issuance of a preliminary injunction requires the court to consider whether there exists some critical public interest that would be injured by the grant of such relief. *Bonner v. Pacific Seafood Group*, 822 F.3d 1011 (9th Cir. 2016).

The public interest inquiry in deciding whether to grant preliminary injunctive relief primarily addresses the impact on nonparties rather than parties; it embodies the Supreme Court's direction that, in exercising their sound discretion, courts of equity should pay particular regard for public consequences in employing the extraordinary remedy of injunction. *CTIA - The Wireless Association v. City of Berkeley, California*, 928 F.3d 832 (9th Cir. 2019). When the reach of an injunction is narrow, limited only to the parties, and has no impact on nonparties, the public interest will be at most a neutral factor in the analysis rather than one that favors granting or denying preliminary injunction; if, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction. *Stormans, Inc. v. Selecky*, 586 F.3d

1109 (9th Cir. 2009).

The FMERA defendants adopt the position of the New Jersey state defendants, including Governor Murphy and Senator Scutari, as set forth in ECF 156.  One person with a grudge seeks to void a massive project that would "negatively impact and prejudice all New Jerseyans." In the case at hand, Plaintiff makes no effort at all to weigh the damage a preliminary injunction would visit upon the parties to the sale, not the least of which are the people of New Jersey who stand to benefit significantly from the transaction and the construction of a state-of-the-art production studio.  Plaintiff's circular arguments as to how a preliminary injunction would benefit the public are predicated on wholly unsupportable and reckless accusations of money laundering, fraud, and RICO violations associated with the sale of the Mega Parcel. These outlandish and unverified claims do not form the basis for injunctive relief. On the contrary, allowing the sale to proceed would foster economic growth, create jobs, and benefit citizens of New Jersey.

Denying the sale would harm the public by delaying economic progress and stifling investment for a project that is fully aligned with the RFOTP requirements and the Governor's agenda.


### POINT III

### PLAINTIFF HAS NO STANDING

For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, U.S. 141 S. Ct. 2190, 2203, 210 L.Ed.2d 568 (2021). "It is the plaintiffs' burden, at the pleading stage, to establish standing," *Reilly v. Ceridian Corp*., 664 F.3d 38, 41 (3d Cir. 2011), by "alleg[ing] facts that affirmatively and plausibly suggest that [they] ha[ve] standing to sue," *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016) (quoting *Amidax Trading Grp. v. SWIFT*

*SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). Plaintiffs must meet this burden "for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).

The Supreme Court has boiled down the standing inquiry into its three "irreducible" elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016), as revised (May 24, 2016) (citing *Lujan*, 504 U.S. at 560-61, 112 S.Ct. 2130).

Plaintiff's petition seeks to stop a transaction that was lawfully executed more than a year before he raised any objection.   The sale of the Mega Parcel to Netflix was negotiated in good faith and in full compliance with the regulations governing the conduct of FMERA operations, many of which plaintiff has incorrectly interpreted in his application. Plaintiff has suffered no injury, as the requirements governing the sale of the Mega Parcel <u>did not</u> mandate the development of residential buildings, but instead required that <u>if</u> residential development was part of the offer, then affordable housing must be part of the plan.

> (b) For developments consisting of newly-constructed residential units located, or to be located, within the Fort Monmouth Project Area, at least 20 percent of the residential units constructed shall be required to be reserved for occupancy by low or moderate income households, to the extent this is economically feasible.

*See* N.J.A.C. 19:31C-3.23(b).

Plaintiff's petition fails to provide any allegations sufficient to satisfy the standard set forth under *Lujan*. The petition does not allege how Plaintiff was injured, nor does it allege how any injury was proximately caused by FMERA. Instead, Plaintiff shifts his argument onto alleging injury to a speculative group of people based off an incomplete reading of N.J.A.C.

16

19:31C-3.1 *et seq*. Plaintiff mistakenly argues that the approval of Netflix's purchase of the Mega Parcel from FMERA did not comply with the Fair Housing Act, nor the constitutional mandate of *Southern Burlington County MAACP v. Township of Laurel* to provide a realistic opportunity for the construction of lower-income housing. This argument is flatly rejected as an incorrect and misleading reading of the relevant statute, as the FMERA board was permitted to consider various factors in the sale of the Mega Parcel, as highlighted below.

> "...the Board shall review and approve a recommendation of the Director and FMERA to offer the property for sale through the offer to purchase process. In its determination to use the offer to purchase process, ***the Board may also consider various factors including, but not limited to, purchase price, jobs to be created and timing***, to determine whether the offer to purchase process will enhance the economic value to FMERA or Fort Monmouth.

> *See* N.J.A.C. 19:31C-2.5(a) (emphasis added).

The scoring criteria for the 2022 RFOTP included the following factors: purchase price, estimated permanent jobs, purchase terms including expedited but realistic timeline to closing, propose project's capital investment, the purchaser's financial capacity to meeting the proposed terms of the purchase and project completion, impact to host municipality, and positive economic impact on the State considering all uses included in the proposal and considering the alignment with ethe governor's Economic Plan's strategic priorities.  The FMERA Board approved the Netflix offer which had no obligation to construct affordable housing as part of the Project since the Project did not include any residential units. All responsive proposals were independently scored and the evaluation committee for FMERA recommended proceeding with negotiations for a PSARA with Netflix who submitted the highest evaluated offer when considering the factors listed above.

It is also true that plaintiff waived his right to object to the PSARA with Netflix as he never objected to it during the period of time when a party may appeal a state administrative

agency decision, which is clearly set forth under New Jersey Court Rule 2:4-1(b).  The Kopach certification notes in detail the process completed by FMERA and Netflix, with the relevant time of 45 days in which to file an appeal of an agency decision under R. 2:4-1(b).  Even assuming that Plaintiff had standing to appeal within the 45-day time period set forth in N.J. Ct. Rule 2:4-1(a), Plaintiff never filed such an appeal or objection despite his unsupported contention that an objection was lodged.  The 45-day challenge period for approval of the PSARA would have started on December 21, 2022, which was the day FMERA approved the adoption of the PSARA with Netflix. Plaintiff never filed any objection or appeal at any time, waiving his right to complain about it now.  Similarly, the FMERA Board approved Reuse Plan Amendment #20 at their board meeting on February 21, 2024 and Plaintiff never filed an appeal or objection within the 45-day challenge period.  Likewise, pursuant to N.J.A.C. 19:31C-3.27(c)(7), during the Reuse Plan adoption process, Plaintiff never submitted comment or objection to the host municipalities during the 45-day comment period to voice his concerns or objections.

For the reasons set forth, it is respectfully submitted that Plaintiff has no standing to bring forth his petition as he has failed to suffer an injury traceable to the conduct of FMERA that is likely to be redressed by a judicial decision.

## POINT IV

## PLAINTIFF HAS NOT ESTABLISHED ANY BASIS TO WAIVE THE BOND.

Generally, a bond is a condition of preliminary injunctive relief. Fed. R. Civ. P. 65(c) requires a successful applicant for a preliminary injunction to post a bond, "in such sum as the [district] court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined." Thus, the injunction bond "provides a fund to use to compensate incorrectly enjoined defendants." *Instant Air Freight Co.*

*v. C.F. Air Freight, Inc*., 882 F.2d 797, 804 (3d Cir.1989). When a court grants an applicant's request for a preliminary injunction, it will generally condition this grant on the applicant's posting a bond. The applicant then decides whether to accept the preliminary relief by posting the bond or to withdraw its request. The applicant may base its decision on whether it wants to expose itself to liability up to the bond amount. *Sprint Commc'ns Co. L.P. v. CAT Commc'ns Int'l, Inc*., 335 F.3d 235, 240 (3d Cir. 2003).

Here, as Plaintiff does with most of the arguments in this motion, a cursory claim is made that Plaintiff is "indigent" and accordingly should not be required to post a bond.  In fact, the very case Plaintiff cites mandates the imposition of a significant bond given the nature of the transaction.

> "Specifically, an exception to Rule 65(c) is warranted when bosting a bond would impose a burden on the movant that ***outweighs any possible loss to the enjoined party***…"
>
> *Gilliam v. United States Dep't of Agric*., 486 F. Supp. 3d 856, 882 (E.D. Pa. 2020) (emphasis added).

In essence, Plaintiff seeks to disrupt a near $1,000,000,000.00 transaction while at the same time alleging that his murder conviction represents a "rare exception" to the rule that requires him to post a bond for injunctive relief. Simply put, Plaintiff brings this motion because of a personal vendetta against Netflix, a party who has not yet been served in this lawsuit. Even if Plaintiff was able to establish the necessary prongs for injunctive relief, he is further unable to formulate a valid argument as to why he is not required to post a bond. The Court should not gift the plaintiff a windfall simply because he is a convicted murderer. Plaintiff's argument is once again entirely predicated upon allegations of illegality stemming from the sale of the Mega Parcel, and without basis contends that Defendants are unable to show any harm suffered. However, Plaintiff makes zero efforts to weigh the damage injunctive relief would visit upon the

parties to the sale, not the least of which are the people of New Jersey who stand to benefit

significantly from the transaction and the construction of a state-of-the-art production studio.

## POINT V

## PLAINTIFF' FAILURE TO SERVE NETFLIX WITH THE COMPLAINTS IS FATAL
## TO THIS MOTION

Despite having filed a Complaint and Amended Complaint months ago, plaintiff has not

obtained service over defendant Netflix,.  Rule 65(a)(1) of the F.R.C.P. states that a party may

issue a preliminary injunction only on notice to the adverse party.  *Fed. R. Civ. P. 65*. Notice

implies an opportunity to be heard. *Sims v. Greene*, 161 F.2d 87, 88 (3d Cir. 1947).

"Parties whose rights are to be affected are entitled to be heard; and in order that they

may enjoy that right they must first be notified." It is equally fundamental that the right to notice

and an opportunity to be heard "must be granted at a meaningful time and in a meaningful

manner." *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972). The

Supreme Court has observed that the Rule requires, at the very least, "a hearing in which the

defendant is given a fair opportunity to oppose the application and to prepare for such

opposition." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 432 n. 7, 94

S.Ct. 1113, 1121 n. 7, 39 L.Ed.2d 435 (1974).

In *Sims*, the defendant, Greene, was not given the opportunity to present evidence on his

behalf or afforded the opportunity to argue it. Because of this the 3rd Circuit found that the

plaintiff's preliminary injunction should be set aside even if there were no other ground for doing

so. *Sims*, 161 F.2d at 89. If a non-movant is not given proper notice, "the preliminary injunction

should be set aside even if there were no other ground for doing so". *Corp. Synergies Grp., LLC

v. Andrews*, 775 F. App'x 54, 60 (3d Cir. 2019). In that case, the 3rd circuit found that proper

notice was not given to the defendant when they had no notice that the injunctive relief ordered by the District Court was even under consideration, until it was actually issued. *Id* at 60-61. In the case at hand, no notice has been given to Netflix whatsoever.

Under F.R.C.P. Rule 5(a)(1)(d), every party must be served: a written motion, except one that may be heard ex parte. *Fed. R. Civ. P. 5*. Furthermore F.R.C.P. Rule 5(a)(2) requires that all parties not in default be served with essentially all papers and pleadings filed subsequent to the original complaint. *Fed. R. Civ. P. 5*. Where the moving party has failed to serve a motion on the nonmoving party, courts have struck or denied the motion or set aside the relief requested in the motion if already granted. *Schneider v. Colegio de Abogados de Puerto Rico*, 187 F.3d 30, 57 (1st Cir. 1999).

Here, the lack of service on Netflix is fatal to the motion.  Even if plaintiff's petition had a scintilla of merit, it could not be granted because the most significant party involved in the transaction plaintiff seeks to halt has not been served.

## **CONCLUSION**

For the foregoing reasons, it is respectfully requested that Plaintiff's Motion for Ad Interim Relief, or in the alternative injunctive relief, be denied with prejudice.

Respectfully Submitted,

**GORDON REES SCULLY MANSUKHANI**
Attorneys for Defendants

By: _____
ROY F. VIOLA, JR.

Dated: July22, 2024