IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CALEB L. MCGILLVARY, | : | |
|     Plaintiff, | : | No. 23-cv-22605 |
| | : | |
| v. | : | |
| | : | |
| NICHOLAS SCUTARI, et al., | : | |
|     Defendant. | : | |

**MEMORANDUM**

**Younge, J.**                                                                                                        **August 20, 2024**

Currently before the Court is a motion to consolidate (ECF No. 87) and a Motion under Rule 83(b) and the All Writs Act (ECF No. 7) filed by the Plaintiff.  In these two motions, Plaintiff seeks to consolidate this action with a habeas corpus action that he filed in the federal District Court of New Jersey, *McGillvary v. Davis*, No. 22-cv-4185-CPO (D.N.J.).  Plaintiff also requests that the Court enter a stay of proceedings in the case *sub judice* pending resolution of his habeas action filed at *McGillvary v. Davis*, No. 22-cv-4185-CPO (D.N.J.).

The Court finds these motions appropriate for disposition without oral argument.  See Fed. R. Civ. P. 78, L.R. 7.1(f).  For the reasons set forth below, Plaintiff's motions will be denied.

**I.      FACTUAL BACKGROUND:**

Plaintiff Caleb "Kai" McGillvary is serving a 57-year sentence for first-degree murder. *State v. McGillvary*, No. A-4519-18, 2021 N.J. Super. Unpub. LEXIS 1651, at *1-2 (N.J. App. Div. May 12, 2021.)  In February 2013, he rose to internet fame as the "hatchet wielding hitchhiker," a moniker he earned by striking Jett Simmons McBride three times over the head with a hatchet after McBride crashed his car into a group of pedestrians and attacked bystanders at the scene.  (Amended Complaint ¶¶ 2, 99-100, 129, ECF No. 84.)  Three months later, and after gaining media notoriety for viral news interviews and media appearances, Plaintiff was

arrested for and ultimately convicted of murdering Joseph Galfy, Jr. – a New Jersey attorney. *State v. McGillvary*, No. A-4519-18, 2021 N.J. Super. Unpub. LEXIS 1651, at *1-2 (N.J. App. Div. May 12, 2021.)  These events were explored in the documentary entitled The Hatchet Wielding Hitchhiker, available on Netflix.  (Amended Complaint ¶¶ 2, 99-100, 129.)

Plaintiff brings this lawsuit against 81 named individual Defendants and eleven unidentified John/Jane Doe or unnamed Defendants.  He asserts sixteen claims – including RICO, ADA, *Bivens*, Section 1983, intentional infliction of emotional distress, defamation, infringement on his First Amendment rights, copyright infringement and retaliation – against many individuals, companies (including Netflix and RawTV), dozens of New Jersey government officials, Governor Murphy, Senator Scutari, New Jersey District Court Judges, members of the New Jersey State Legislature and various groups of Defendants.  (Amended Complaint.) Plaintiff alleged that Defendants engaged in a wide swiping money laundering and bribery scheme in furtherance of providing Robert Menendez with funding for his political campaign. Plaintiff alleged that Defendants' racketing activities improperly influenced Netflix Inc.'s ability to purchase a closed military base in Fort Monmouth County, New Jersey at a price below market value.  As will be discussed in more detail below, the Amended Complaint also makes reference to release of a documentary about Plaintiff, entitled The Hatchet Wielding Hitchhiker. Plaintiff offers The Hatchet Wielding Hitchhiker in support of his defamation and copyright infringement claims.

A. **The McBride Incident and Plaintiff's Viral Interviews:**

Prior to being incarcerated, Plaintiff worked as a traveling troubadour and/or professional street performer.  *People v. McBride*, 2016 Cal. App. Unpub. LEXIS 566, at *22 (Cal. Jan. 27, 2016); https://en.wikipedia.org/wiki/Caleb_Lawrence_McGillvary.  On February 1, 2013,

Plaintiff was involved in a violent incident while hitchhiking with a man named Jett Simmons McBride in Fresno County, California. (Amended Complaint ¶ 2.) The two men were traveling together after McBride had offered Plaintiff a ride. *McBride*, 2016 Cal. App. Unpub., at *18. McBride – who was under the influence of marijuana that was allegedly supplied by Plaintiff and seemingly having a mental health crisis – drove his car into a group of power line workers. *Id.* at *17. McBride then exited the vehicle and began attacking a man whom he had hit with the automobile as well as a woman who was attempting to provide aid to the individual who had been struck by McBride's automobile. (Amended Complaint ¶ 2.) Plaintiff thwarted the attack by striking McBride over the head three times with his camping hatchet. (*Id.*); *McBride,* 2016 Cal. App. Unpub., at *21. Plaintiff was not charged with any crimes related to bludgeoning McBride. (Amended Complaint ¶ 2.)

Plaintiff was leaving the scene when he was stopped by a reporter and camera operator from KMPH Fox News. (*Id.*) The KMPH journalist proceeded to interview Plaintiff about the incident, and Plaintiff described the events that had occurred which included his use of a hatchet to subdue McBride. (*Id.*) The interview went viral with Plaintiff's colorfully recounted interactions with McBride, stating that he smashed McBride over the head three times with his camping hatchet. (*Id.*)

B.      **Plaintiff's Murder Conviction on May 30, 2019, and Habeas Corpus Petition:**

A few months after he shot to fame, Plaintiff murdered a 74-year-old man in the state of New Jersey on May 12, 2013. *State v. McGillvary*, No. A-4519-18, 2021 N.J. Super. Unpub. LEXIS 1651, at *1-2 (N.J. App. Div. May 12, 2021.) On May 16, 2013, Plaintiff was arrested for the murder of New Jersey attorney Joseph Galfy, Jr. after Galfy was found "beaten to death, lying face-down on his bedroom floor." *McGillvary*, 2021 N.J. Super. Unpub. LEXIS 1651, at

*1.  Plaintiff was convicted of first-degree murder, and on May 30, 2019, received a 57-year sentence that he is currently serving in a New Jersey prison. *Id.*; *McGillvary v. New Jersey*, 142 S. Ct. 1685 (2022) (denying cert.).

Plaintiff filed a direct appeal from his criminal conviction to the Superior Court of New Jersey, Appellate Division, in which he raised eight alleged errors on appeal. (*State v. McGillvary*, No. A-4519-18, 2021 N.J. Super. Unpub. LEXIS 1651; affirmed *McGillvary v. New Jersey*, 142 S. Ct. 1685 (2022). Plaintiff exhausted his direct appellate rights after his appeal was formally closed. Plaintiff then filed a Habeas Corpus Petition on June 22, 2022. *McGillvary v. Davis*, No. 22-cv-4184-CPO (Plaintiff's Habeas Petition filed at ECF No. 1). Plaintiff's Habeas Petition takes the form of a collateral attack on the criminal legal proceedings that led to his conviction in the state of New Jersey. *Id.*

In his Habeas Petition, Plaintiff asserts two distinct legal errors that he alleges the trial court committed during his criminal murder trial. *Id.* First, Plaintiff asserts that the trial court erroneously denied his right to self-representation. *Id.* page 8. Second, Plaintiff asserts that the trial court erroneously denied his *pro se* Brady motion without a full and fair hearing. *Id.* pages 8-15. Under the first ground for habeas corpus relief, Plaintiff asserts that "the trial court's January 7, 2019, denial of [his] Sixth Amendment right to self-representation was a structural error requiring reversal of [his] conviction through writ of habeas corpus." *Id.* page 8. Under the second ground for habeas corpus relief, Plaintiff asserts that the "trial court erred in denying his "*pro se* motion to remedy the destruction of Brady materials" which "deprived [him] of his due process and confrontation rights, in violation of the 5th, 6th, and 14th Amendments[.]" *Id.* page 11.

Plaintiff's Habeas Petition was assigned to the Honorable Christine P. O'Hearn. *McGillvary v. Davis*, No. 22-cv-4185-CPO.  Plaintiff filed several motions, including a motion to recuse the presiding Judge O'Hearn, on December 1, 2023.  *McGillvary v. Davis,* No. 22-cv-4185-CPO (Motion to Recuse filed at ECF No. 32 in the habeas corpus action).  On December 11, 2023, in the case *sub judice*, Plaintiff filed a motion to recuse the Honorable Renee Marie Bumb, Chief Judge in the New Jersey District Court.  (Motion to Recuse, ECF No. 3.)  Plaintiff's various recusal motions were based on the fact that he had sued multiple federal District Court of New Jersey judges as named Defendants in this action including Judge O'Hearn and Judge Bumb.  (Motions to Recuse.)

On January 2, 2023, Third Circuit Chief Judge Michael A. Chagares entered an Order reassigning the case *sub judice* to this Court (Order, ECF No. 5.)  Thereafter, on January 9, 2024, Judge O'Hearn administratively terminated Plaintiff's habeas corpus action pending the resolution of the case *sub judice*.  Judge O'Hearn's Order specifically marked Plaintiff's habeas corpus action "closed until and unless the Court enters an Order reopening the matter."  *David v. Davis,* No. 22-cv-4185-CPO (Judge O'Hearn's Order granting administrative termination entered in the habeas action at ECF No. 36.).

C.     The Documentary – The Hatch Wielding Hitchhiker:

On or about December 13, 2022 or January 10, 2023, Netflix released the documentary The Hatchet Wielding Hitchhiker, which investigates Plaintiff's upbringing, his viral fame, and ultimately his conviction for murdering Galfy.  (Amended Complaint ¶¶ 129, 130, 134.) Plaintiff asserts various legal theories of defamation of character in connection with the release of the documentary.  (Amended Complaint ¶¶ 129-130.)  Plaintiff alleges, *inter alia*, that the documentary unfairly took into account the version of events advanced by the Union County

5

Prosecutor's Office which had charged him with the murder of Galfy. (*Id.*) Plaintiff also alleges that the documentary unfairly portrayed events surrounding his February 2013 roadside incident with McBride. (*Id.*) The documentary is also the factual basis for Plaintiff's copyright infringement claim. (*Id.* ¶¶ 99, 133.) Plaintiff cites to various artistic works that he purportedly created which he alleges were misappropriated by Defendants Netflix and RawTV. (*Id.* ¶¶ 133, 134.)

D.   **Sale of Fort Monmouth, New Jersey to Netflix, Inc.:**

Throughout the Amended Complaint, Plaintiff makes reference to the sale of a parcel of land located in Fort Monmouth, New Jersey. (Amended Complaint.) It would appear that after several years of negotiations, Defendant Netflix, Inc., entered into an agreement to purchase a parcel of public land that was nearly 300 acres in size which had been used as a military base in Fort Monmouth County, New Jersey. https://www.njeda.gov/njeda-board-designates-netflix-as-a-studio-partner-continuing-new-jerseys-film-industry-momentum/ (last visited on Jul 14, 2024). Netflix intends to build a state-of-the-art production studio on the ground that was once used as a military base.

In opposition to Plaintiff's motion, Defendants come forward with an affidavit prepared by Kara Kopach, the executive director of Fort Monmouth Economic Revitalization Authority (FMERA).[1] (Kopach Affidavit, ECF No. 167-2.) Mr. Kopach avers that the parcel of land was appraised at $55.4 million dollars by a licensed professional appraiser. (*Id.* ¶18.) Ms. Kopach

---

[1] FMERA is a New Jersey government authority created by the New Jersey legislature pursuant to authorization under P.L. 2010, c. 51 (N.J.S.A. 52:271-18 et seq). (*Id.* ¶2.) The scope of FMERA's authority and mandate are governed by its enabling Act, N.J.S.A. 52:271-18 to 52:271-41 and its rules, New Jersey Administrative Code, N.J.A.C. 19:31C-1.1 to 19:31C-3.28 ("regulations"). (*Id.* ¶2.) FMERA's general mission pursuant to N.J.S.A. 52:271-24 is planning and implementing the redevelopment and reuse of Fort Monmouth, formerly operated as a United States Army Installation.

also establish a final closing price nearly equivalent to the appraised value at Fifty-Five Million ($55,000,000.00). (*Id.* ¶26.)

In this action, Plaintiff seeks to enjoin (or rescind) the sale of the mega parcel of land to Netflix, Inc., based on the theory that the land is being sold at a price below market value in connection with a bid rigging scandal. (Amended Complaint ¶¶ 99, 101, 132, 141.) Plaintiff also alleges that the redevelopment plan was adopted and approved despite the fact that it failed to meet certain constitutional and legal requirements like, for example, providing for lower-income housing. Plaintiff alleges that the Netflix land transaction and revitalization plan was part of a larger conspiracy which Plaintiff refers to in the pleadings as a bid rigging scandal. It would appear under Plaintiff's narrative of events that he uncovered a broad reaching bid rigging scandal involving public officials, politicians and judges located in New Jersey who committed various illegal acts of corruption, misconduct and impropriety which included improper campaign contributions and money laundering. (*Id.*)

## II.     LEGAL STANDARD:

Fed. R. Civ. P. 42(a) allows for separate cases to be consolidated if the actions "involve a common question of law or fact."[2]  "The purpose of consolidation is to streamline and economize pretrial proceedings so as to avoid duplication of effort, and to prevent conflicting outcomes in cases involving similar legal and factual issues." *In re TMI Litigation*, 193 F.3d 613, 724 (3d Cir. 1999). The ultimate determinant is whether an order to consolidate would "advance the administration of justice and avoid unnecessary costs or delay." *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Platkin*, 2023 U.S. Dist. LEXIS 19304, *6 (D.N.J. Feb. 3, 2023). Rule

---

[2]  Plaintiff appears to request that the Court consolidate the actions pursuant to Federal Rule of Civil Procedure ("FRCP") 83(b). FRCP 83(b) concerns procedure where there is no controlling law and is inapplicable here, as there is well-established precedent controlling consolidation.

42(a) grants District Court Judges broad discretion that requires balancing a myriad of factors. Such factors include "the interest of efficient and judicial economy gained through consolidation against the delay or expense that might result from simultaneous disposition of separate actions." *Durso v. Samsung Elecs. Am., Inc.*, No. 12-cv-05352, 2014 U.S. Distr. LEXIS 38817, *1 (D.N.J. Mar. 24, 2014). Motions to consolidate should be denied where the common issue is not "a principal one, if it will cause delay in one of the cases, or will lead to confusion or prejudice in the trial of a case." *Farahmand v. Rumsfeld*, No. 02-cv-1236, 2002 U.S. Dist. LEXIS 22473, *4 (E.D. Pa. Nov. 20, 2002). The moving party bears the burden of proof on a motion to consolidate. *Platkin*, 2023 U.S. Dist. LEXIS 19304 at *7.

Rule 42 provides courts with broad discretion to consolidate cases that "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see also A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 212 (3d Cir. 2014). "Consolidation is appropriate in cases involving the same plaintiff, the same defendants, [and] identical or similar claims arising out of the same incident or a common set of facts." *J.C. v. Ford*, Nos. 15-4745, 13-4066, 2017 WL 4155086, at *1 (E.D. Pa. Sept. 19, 2017).

Courts in this District will deny motions to consolidate where there is a lack of commonality between cases. *Nance v. Nogan*, No. 17-672, 2018 WL 2298357, at *10 (D.N.J. May 21, 2018) (denying motion to consolidate where "allegations [did] not appear to overlap in any significant way"); *Cooper v. Cook*, No. 15-1293, 2015 WL 1789001, at *6 (D.N.J. Apr. 20, 2015) (denying motion to consolidate where two separate "complaints [did] not consist of common questions of law or fact"). Courts have broad discretion to consolidate actions and the "mere existence of common issues...does not require consolidation." *Nedrick v. Cnty. of Salem*, No. 22-5143, 2024 WL 1110354, at *6 (D.N.J. Mar. 13, 2024). Though courts may consolidate

cases where "consolidation would facilitate the administration of justice," the court "'should weigh the benefits of judicial economy against the potential for new delays, expense, confusion or prejudice.'" *Hailey v. City of Camden*, 631 F. Supp. 2d 528, 553 (D.N.J. 2009) (citations omitted). Further, "[t]he moving party bears the burden of establishing that consolidation is warranted." *Nedrick v. Cnty of Salem*, 2024 U.S. Dist. LEXIS 45042, at *6 (D.N.J. March 13, 2024).

### III.  DISCUSSION:

The Court will deny Plaintiff's Motion to Consolidate (ECF No. 87) and Motion under Rule 83(b) and the All Writs Act (ECF No. 7) which seek to consolidate the case *sub judice* with the habeas corpus action that Plaintiff filed in the District Court of New Jersey, *McGillvary v. Davis*, No. 22-cv-4185-CPO (D.N.J.). Consolidation in this instance would be inappropriate because there is no common question of law or fact between the case pending before the Court and Plaintiff's Habeas Corpus Petition filed in *McGillvary v. Davis*, No. 22-cv-4185-CPO. *Williams v. Gavin*, 640 F. App'x 152, 155–56 (3d Cir. 2016) (affirming denial of motion to consolidate where "parties in the cases [were] different, as [were] the events giving rise to the cases"); *Nance v. Nogan*, 2018 U.S. Dist. LEXIS 84444, at *29 (D.N.J. May 18, 2019) (denying motion to consolidate where allegations "involve[d] numerous additional Defendants and entirely different facts"); *Norfolk S. Ry. Co. v. New York Terminals, LCC*, No. 14-7664, 2016 U.S. Dist. LEXIS 174712, at *4 (D.N.J. Dec. 19, 2016) (denying motion to consolidate, noting "there is no overlap...between actual named parties...[i]n each action, the named Defendants are different."); *Cooper v. Cook,* No. 15-1293, 2015 U.S. Dist. LEXIS 51422, at *14 (D.N.J. April 20, 2015) (denying motion to consolidate where allegations differed in both actions).

As previously discussed herein, the case *sub judice* is comprised of civil claims including RICO, defamation of character, intentional infliction of emotional distress, copyright infringement, Section 1983, violation of Plaintiff's First Amendment rights, and ADA allegations. Plaintiff makes these claims against approximately 92 Defendants – including dozens of New Jersey government officials, Governor Murphy, Senator Scutari, numerous federal District Court Judges, members of the New Jersey State Legislature and various groups of Defendants. (Amended Complaint.) These Defendants are not referenced in Plaintiff's Habeas Corpus Petition. Plaintiff alleges that Defendants engaged in wide sweeping money laundering, bribery and racketeering enterprises in relationship to campaign funding for Robert Menendez. Plaintiff implicates Netflix, Inc.'s purchase of land in Fort Monmouth County, New Jersey and the documentary entitled the Hatchet Wielding Hitchhiker with Defendants' allegedly corrupt behavior.

Plaintiff filed a Motion to Recuse Judge Christine P. O'Hearn in the habeas corpus litigation based on the fact that she is a named Defendant in the case *sub judice*. However, the issues implicated in Plaintiff's Motion to Recuse are unrelated to the substantive arguments asserted in his Habeas Corpus Petition. Plaintiff's Habeas Corpus Petition raises errors allegedly committed by the state court trial judge during the legal proceedings that led to Plaintiff's murder conviction in the state of New Jersey. Plaintiff's Habeas Corpus Petition relates solely to Plaintiff's murder trial and alleged abuses of discretion committed by the state trial judge. The Petition inherently only applies to matters that occurred during Plaintiff's murder trial culminating in his conviction. The fact that Judge O'Hearn and other federal district judges who preside in the District Court of New Jersey are named Defendants in the case *sub judice* is insufficient to warrant consolidation with Plaintiff's habeas corpus action – a proceeding that is

currently marked closed after Judge O'Hearn entered an order that administratively terminated the habeas action pending resolution of the case *sub judice*.

Plaintiff fails to provide any explanation for why he believes consolidation would streamline efficiency or advance the administration of justice.  The Court believes that consolidation in this instance would not "facilitate the administration of justice" and there is no indication that consolidation would "contribute to the expeditious resolution of either matter." *Nedrick v. Cnty. Of Salem*, NO. 22-5143, 2024 U.S. Dist. LEXIS 45042, at *16 (D.N.J. March 13, 2024) (denying motion to consolidate where consolidation "would simply delay the newly-filed case further and likely prejudice [d]efendants."); see also *Margolis v. Hydroxatone, LLC*, No. 11-4355, 2013 U.S. Dist. LEXIS 31346, at *10 (D.N.J. Mar. 6, 2013) (denying motion for consolidation where, *inter alia*, consolidation "would not avoid unnecessary costs").  Under the circumstances, consolidation of these matters would inequitably permit the Plaintiff to make allegations unrelated to his Habeas Corpus Petition solely for the purpose of rendering the cases similar.

Any consolidation of these matters would unfairly prejudice Defendants by forcing them to litigate civil claims in the context of Plaintiff's habeas corpus proceeding which is essentially a criminal proceeding.  Many of the Defendants identified herein would suffer prejudice if they were latched to criminal matters with which they have absolutely no involvement.  *Margolis v. Hydroxatone, LLC*, No. 11-4355, 2013 U.S. Dist. LEXIS 31346, at *10 (D.N.J. Mar. 6, 2013) (denying motion to consolidate where consolidation would both prejudice parties and "not work to save judicial resources and efficiency").  "[T]he mere presence of...common issues does not compel consolidation." *Id.* page 10.

## IV. CONCLUSION:

For these reasons, Plaintiff's two motions to consolidate the case *sub judice* with *McGillvary v. Davis*, No. 22-cv-4185-CPO (D.N.J.) will be denied.

**BY THE COURT**:

   /s John Milton Younge
Judge John Milton Younge