Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

DECEMBER 30, 2024

Clerk, US Dist. Ct. - DNJ
US Courthouse
4th and Cooper Streets
Camden, NJ 08101-2797

      RE: Caleb L. McGIllvary v. Nicholas Scutari et al
      Civil Action No. 1:23-cv-26605-JMY
      Hon. John Milton Younge, U.S.D.J.

Dear Clerk;

      Please find enclosed and file onto the docket the original
of my brief in opposition to Federal Judicial Defendants' motion
to dismiss my First Amended Complaint; and proof of service
thereof; in the above-captioned matter.

                    Kind Regards,

                    Caleb L. McGillvary
                    In Propria Persona

ENCL:
CC: FILE

RECEIVED

JAN - 7 2025

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

PROOF OF SERVICE

I, Caleb L. McGillvary, declare pursuant to 28 U.S.C. 1746 that on today's date, I placed in the institutional mailing system here where I'm incarcerated at NJ State Prison 3rd & Federal Streets Trenton, NJ 08625; with First Class Postage prepaid to be sent via USPS Mail; the original of my brief in opposition to Federal Judicial Defendants' motion to dismiss my First Amended Complaint; in the above-captioned matter. to the Clerk of the District Court at USDC-DNJ US Courthouse 4th & Cooper Sts. Camden, NJ 08101-2797. Pursuant to the prison mailbox rule, these documents are constructively filed as of the date of mailing. Pursuant to DNJ Local Civil Rules, upon said filing the Clerk files Plaintiff's document into the CM/ECF system. See DNJ L.Civ.R. 5.2.2 ("All civil ...  cases and documents filed in this Court, will be entered into the Court's ECF System in accordance with these Procedures."). Upon entry of a document in CM/ECF, notice of electronic filing thereof ("NEF"); is automatically thereby sent to all CM/ECF-participating parties. See DNJ L.Civ.R. 5.2.1(d)("NEF is a notice automatically generated by the Electronic Filing System at the time a document is filed with the system..."). This NEF constitutes service upon all such parties. See DNJ L.Civ.R. 5.2.14(b)(1)("Transmission of the NEF constitutes service of the filed document on Filing Users"). Therefore, pursuant to this Court's 3/21/24 order; ECF 12; on today's date I have also served a copy of each said document on all appearing captioned Defendants, who are represented by CM/ECF-user Counsel.

I hereby invoke the prison mailbox rule.

I declare under penalty of perjury that the foregoing statements made by me are true and accurate.

Executed this 30ᵀᴴ Day of DECEMBER , 20 24

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

RECEIVED

JAN - 7 2025

_____ M
CLERK, U.S. DISTRICT COURT - DNJ

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| Caleb L. McGillvary | ) CIVIL ACTION NO. |
| PLAINTIFF | ) 1:23-cv-26605-JMY |
|  | ) Hon. John Milton Younge, USDJ |
| V. | ) |
|  | ) Motion Date: |
| Nicholas Scutari et al | ) To be decided by the Court |
| DEFENDANTS | ) |
|  | ) |

## BRIEF IN OPPOSITION TO FEDERAL JUDGE DEFENDANTS' MOTION TO DISMISS

FILED

JAN - 7 2025

AT 8:30_____M
CLERK, U.S. DISTRICT COURT-DNJ

# TABLE OF CONTENTS

Table of Authorities ...vii

Introduction ...1

Statement of the Case ...2

    1. The False Conviction ...2

        A. The Destruction of Evidence During the Investigation ...2

        B. The Bribery of Witnesses At Trial ...3

        C. The Habeas Petition At Issue ...4

    2. Procedural History of the Instant and Related Matters ...5

        A. Inordinate Delays in Show Cause Order ...5

        B. Obstruction of the Davis Proceeding Using the Mails ...6

        C. Mail Fraud in the Davis Proceedings ...6

        D. Obstruction of the Petition to Perpetuate Testimony ...6

        E. Obstruction of the Galfy and Davis Actions through Administrative Termination ...7

        F. Obstruction of the Davis Action Through Suspension of the Writ of Habeas Corpus ...7

    3. Claims Against Federal Judge Defendants ...8

STANDARD OF REVIEW ...8

    1. **PLAINTIFF IS PRO SE** ...8

    2. FED. R. CIV. P. 8 ...8

    3. MOTION TO DISMISS UNDER RULE 12 ...9

LEGAL ARGUMENT ...9

**POINT I: THE PAGE COUNT OF EACH CLAIM IS REASONABLY SHORT, WHEN CONSIDERED AS THOUGH THE CLAIM WERE ITS OWN COMPLAINT; AND PRO SE PLAINTIFF REQUIRES LIBERAL CONSTRUCTION OF A COMPLEX PLEADING REQUIREMENT**

...9

1. RULE 8(a)

...9

2. RULE 9(b)

...12

**POINT II: RULE 12 IS SATISFIED BY ALLEGING DATES, TIMES, IDENTITIES, AND NATURE OF THE ACTS; AND STATE OF MIND, INCLUDING AGREEMENTS AND INTENTIONS, MAY BE ALLEGED GENERALLY EVEN UNDER RULE 9(b)**

...13

**POINT III: THIS COURT'S FINDINGS ON PLAINTIFF'S MOTION TO CONSOLIDATE PRECLUDE DEFENDANTS' ATTEMPTED INVOCATION OF EITHER HECK-BAR OR THE ROOKER-FELDMAN DOCTRINE**

...13

**POINT IV: THIS COURT'S FINDINGS ON PLAINTIFF'S MOTION FOR AD INTERIM RELIEF ARE PRELIMINARY BY NATURE, AND NOT BINDING FOR PURPOSES OF A RULE 12(b) MOTION**

...13

**POINT V: JUDICIAL DEFENDANTS ARE NOT ENTITLED TO IMMUNITY FOR NON-JUDICIAL INTERCEPTION OF THE MAIL, NOR FOR THE AGREEMENTS THEMSELVES, WHICH ARE PREDICATE ACTS IN THEMSELVES**

...14

1. THE ACTIONS TAKEN BY FEDERAL JUDGE DEFENDANTS WERE NOT DONE IN THEIR JUDICIAL CAPACITY, BUT RATHER IN THEIR ADMINISTRATIVE ROLES AS EMPLOYERS OFFERING BENEFIT AS CONSIDERATION, OR EXTORTING THROUGH THREAT OF REPRISAL, TO JOHN DOES 1-3 AND JANE DOES 1-2 FOR PERFORMANCE AND NON-PERFORMANCE OF ACTS

...14

A. STANDARD OF REVIEW

...14

B. ANALYSIS

...15

i.) CERTAIN ACTIONS TAKEN BY JUDGE DEFENDANTS WERE IN THE COMPLETE ABSENCE OF JURISDICTION

...15

ii.) CERTAIN ACTIONS TAKEN BY JUDICIAL DEFENDANTS WERE IN THEIR ADMINISTRATIVE, NOT JUDICIAL, CAPACITIES

...17

a.) Judge Christine P. O'Hearn

...18

b.) Judge Madeline Cox-Arleo

...19

iii

c.) Judge Renee Marie Bumb

...19

d.) Judge Cathy L. Waldor

...20

2. THE ACTIONS TAKEN BY JOHN DOE 3 WERE OUTSIDE THE SCOPE OF HIS DUTIES AS A JUDICIAL EMPLOYEE, AND HE WAS REASONABLY APPRISED THAT THEY WOULD BE UNLAWFUL AND DEPRIVE PLAINTIFF OF CONSTITUTIONAL RIGHTS

...20

A. STANDARD OF REVIEW

...21

B. ANALYSIS

...21

i.) QUASI-JUDICIAL IMMUNITY DOESN'T APPLY TO JOHN DOE 3

...21

ii.) QUALIFIED IMMUNITY DOESN'T APPLY TO JOHN DOE 3

...21

**POINT VI: PLAINTIFF HAS STATED CLAIMS UNDER 1983 AND BIVENS FOR DEPRIVATION OF HIS CONSTITUTIONAL RIGHTS**

...22

1. CORRESPONDENCE (1st, 5th, & 14th Amendments)

...23

A. U.S. Dist, Ct - D.N.J. Obstructionists

...24

B. U.S. Dist. Ct. - D.N.J. Rule 27(a)

...24

2. ACCESS TO THE COURTS (Privileges & Immunities Clause of Art. IV, 1st, 5th, and 14th Amendments)

...25

A. PLAINTIFF HAS ALLEGED THE EXISTENCE OF NON-FRIVOLOUS CLAIMS WHICH HIS RIGHT TO ACCESS THE COURTS WAS INTERFERED WITH IN REGARDS TO

...25

i.) U.S. Dist. Ct. - D.N.J. Habeas

...25

ii.) U.S. Dist. Ct. - D.N.J. Rule 27(a)

...25

3. PROCEDURAL DUE PROCESS & SUSPENSION CLAUSE (5th & 14th Amendments, U.S. Const. Art. I, 9, cl. 2)

...25

**POINT VII: PLAINTIFF HAS PLEADED SEVERAL INSTANCES OF RETALIATION FOR EXERCISE OF HIS RIGHTS UNDER THE ADA OR THE RA**

...26

1. STANDARD FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT OR THE REHABILITATION ACT
...26

2. ANALYSIS OF SPECIFIC INSTANCES OF RETALIATION
...28

A. RETALIATION BY O'HEARN FOR EXERCISE OF RIGHTS UNDER ADA/RA
...28

B. RETALIATION BY O'HEARN, BUMB, AND JOHN DOE 3 FOR EXERCISE OF RIGHT TO PETITION UNDER THE ADA/RA
...28

**POINT VIII: FEDERAL JUDICIAL DEFENDANTS ACCEPTED BENEFITS AS CONSIDERATION CONSTITUTING STATE LAW BRIBERY, FOR THE OBSTRUCTION OF FEDERAL PROCEEDINGS, AND FOR THE EXTORTION UNDER COLOR OF OFFICIAL RIGHT OF ACTS ENDEAVORING TO OBSTRUCT FEDERAL PROCEEDINGS, WHICH PLAINTIFF WAS DAMAGED THEREBY IN EXPENSES AND DELAYS IN HIS CASES**
...29

1. Formation of the enterprises
...30

A. The Bid Rigging Syndicate
...30

B. The Federal Judicial Defendants' Quid Pro Quo Arrangements
...31

2. The Rigging of the Fort Monmouth Real Estate Bid
...32

3. Plaintiff's Obstructed Filings
...32

4. The Petition for Perpetuation of Testimony
...33

5. The Second Quid Pro Quo Arrangements
...34

6. The Obstruction of the Davis Case
...35

7. The Third Quid Pro Quo Arrangements
...36

8. The Obstruction of the Galfy Case
...37

9. The Fourth Quid Pro Quo Arrangement
...37

**POINT IX: DEFENDANTS TRY TO IMPOSE A SPECIFIC PLEADING REQUIREMENT ON STATE OF MIND, WHICH RULE 9(b) PERMITS TO BE PLEADED GENERALLY**
...38

**POINT X: EVEN IF THE FAC IS RATHER LONG AND CONTAINS SOME SURPLUSAGE, THIS IS A COMPLEX CASE REQUIRING PARTICULARIZED PLEADING, PLAINTIFF IS PRO SE, AND THE FAC SHOULD BE LIBERALLY CONSTRUED DESPITE ITS LENGTH**

...38

**POINT XI: PLAINTIFF HAS PLEADED FACTS SHOWING AN OBSTRUCTION OF JUSTICE CAUSING HIM EXPENSES, WHICH IS REDRESSABLE UNDER RICO, EVEN IF HE HAS NOT SPECIFICALLY PLEADED THE LEGAL THEORY OR STATUTE OF OBSTRUCTION, 18 U.S.C. 1503, A PREDICATE ACT UNDER 18 U.S.C. 1961(d)**

...39

CONCLUSION

...40

CERTIFICATION OF PLAINTIFF

...40

**TABLE OF AUTHORITIES**

**CASELAW**

Alexander v. Choate, 469 U.S. 287, 301 (1985)
...27

Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)
...22, 23, 24, 26

Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 352 (1871)
...16

Bryant v. Sylvester, 1994 U.S. Dist. LEXIS 8501 at *4 (E.D.Pa. June 20, 1994)
...17

Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002)
...24

Clark v. Conahan, 737 F. Supp. 2d 239, 256-257 (M.D.PA. 2010)
...15

Coello v. DiLeo, 2023 U.S. Dist. LEXIS 168084 at *13-14 (D.N.J. 2023)
...14, 16

Davis v. Passman, 442 U.S. 228 (1979)
...22

Dawn v. Ciavarella, 2010 WL 3122858, at *3-5 (M.D.PA. 2010)
...15

Erickson v Pardus, 551 U.S. 89 (2007)
...8

Forrester v. White, 484 U.S. 219, 229-230 (1988)
...15

Gillette v. Ciavarella, 2012 U.S. Dist. LEXIS 11624 at *22 (M.D.PA. 2012)
...15

Hamdi v. Rumsfeld, 542 U.S. 507, 533 (2004)
...23, 25

Hassine v. Zimmerman, 160 F.3d 941, 954 (CA3 1998)
...23, 25

Heiser v. Ryan, 15 F.3d 299, 307 (CA3 1991)
...23

In Re Caleb L. Mcgillvary, Dkt. No 24-_____ (CA3 2024)
...2

In re Jamuna Real Estate LLC, 365 B.R. 540 (E.D.PA. 2007)
...12

In Re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 364 (CA3 2010)
...11

Johnson v. Amtrak, 390 Fed. Appx. 109, 113 (CA3 2010)
...27

Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 (1982)
...5

Kulwicki v. Dawson, 969 F.2d 1454, 1463 (CA3 1992)
...20

LabMD Inc. v. Boback, 2022 U.S. App. LEXIS 24413 at *23 n.12
(CA3 2022)
...9

Leatherman v. Tarrant County Narcotics Intelligence &
Coordination Unit, 113 S. Ct. 1160, 1163 (1993)
...12

Light v. Haws, 472 F.3d 75, 78 (CA3 2007)
...20

Madden v. Myers, 102 F.3d 74, 76 (CA3 1996)
...23, 25

Malley-Duff & Assoc. v. Crown Life Ins. Co., 792 F.2d 341, 355
(CA3 1986), aff'd on other grounds, 483 U.S. 143 (1987)
...18

McCarthy v. Madigan, 503 U.S. 140, 153 (1992)
...24

McGillvary v. Davis, Dkt. No. 1:22-cv-04185-MRH, ECF 44, 46, 48
(USDC-DNJ)
...4, 5, 7

McGillvary v. Galfy, 2022 U.S. Dist. LEXIS 134998 at *12-13
(D.N.J. July 28, 2022)
...3, 7

McGillvary v. Union County, 2020 U.S. Dist. LEXIS 75909 at *14-
15 (D.N.J. Apr. 30, 2020)
...3

Mireles v. Waco, 502 U.S. 9, 11-12 (1991)
...14

Morrison v. Lipscomb, 877 F.2d 463, 465-466 (CA6 1989)
...17

Nasir v. Morgan, 350 F.3d 366, 373 (CA3 2003)
...23

Penn W. Assocs. Inc. v. Cohen, 371 F.3d 118 (CA3 2004)
...16

Pinkerton v. United States, 328 U.S. 640, 646 (1946)
...15, 18

Procunier v. Martinez, 416 U.S. 396, 408-409 (1974)
...23, 24

River City Markets v. Fleming Foods West, 960 F.2d 1458, 1463
(CA9 1992)
...11

Rose v. Bartle, 871 F.2d 331, 366 (CA3 1989)
...12

Stump v. Sparkman, 435 U.S. 349, 362 (1978)
...14, 16

Thornburgh v. Abbott, 490 U.S. 401, 413-414 (1989)
                                                    ...23
Turner v. Safley, 482 U.S. 539, 555-556 (1974)
                                                    ...23
United States v. Cartwright, 359 F.3d 281, 286 (CA3 2004)
                                                    ...11
United States v. Ferriero, 866 F.3d 107, 125 (CA3 2017)
                                                 ...17, 18
United States v. Henley, 360 F.3d 509, 513 (CA6 2004)
                                                    ...11
United States v. Lee, 359 F.3d 194, 207-208 (CA3 2004)
                                                    ...11
United States v. Salahuddin, 765 F.3d 329, 342 (CA3 2014)
                                                    ...17
Wallace v. Powell, 2009 WL 4051974, at *8 (M.D.PA. 2009)
                                                    ...15
Watson v. Rozum, 834 F.3d 417, 422 (CA3 2016)
                                                    ...12
Webster v. Omnitrition Int'l, Inc., 79 F.3d 776, 786 (CA9 1996)
                                                    ...11

**STATUTES**
18  U.S.C. 1503
                                              ...1, 21, 39
18  U.S.C. 1961(d)
                                              ...36, 37, 39
28  U.S.C. 1657(a)
                                                    ...15
28  U.S.C. 2241 et seq.
                                                    ...16
28  U.S.C. 794
                                                    ...27
42  U.S.C. 12132
                                                 ...26, 28
42  U.S.C. 12203
                                                 ...27, 28

**COURT RULES**
D.N.J. L. Civ. R. 5.1 et seq.
                                                    ...21
D.N.J. L. Civ. R. 7.2(b)
                                                    ...40
D.N.J. L. Civ. R. 7.2(d)
                                                    ...40
D.N.J. L. Civ. R. 56.1(a)
                                                    ...4

Fed. R. Civ. P. 8
...8
Fed. R. Civ. P. 8(a)
...9, 12, 13, 18
Fed. R. Civ. P. 8(d)(3)
...
Fed. R. Civ. P. 9(b)
...5, 8, 11, 12, 13, 18, 19, 20, 30, 31, 34, 36, 38
Fed. R. Civ. P. 11(b)(3)
...8, 9
Fed. R. Civ. P. 12
...9
Fed. R. Civ. P. 12(b)
...13
Fed. R. Civ. P. 27(a)
...6, 24, 25, 28, 33
Fed. R. Civ. P. 27(b)
...6
Fed. R. Civ. P. 65
...
Fed. R. Evid. 201(b)
...5, 10, 31
Fed. R. Evid. 406
...11

**CONSTIRUTIONAL PROVISIONS**

U.S. Const. Amdt. I
...23, 24
U.S. Const. Amdt. V
...23, 24, 25
U.S. Const. Amdt. XIV
...23, 24, 25
U.S. Const. Art. I, 9, cl. 2
...16, 19, 25, 26
U.S. Const. Art. III
...7, 15
U.S. Const. Art. IV, 2, cl. 1
...24

**OTHER AUTHORITIES**

https://www.opensecrets.org
...10

## **INTRODUCTION**

As DNJ Defendants[1] admit in their "preliminary statement"; "Plaintiff alleges that Federal Judicial Defendants [conducted the affairs] of a[n E]nterprise by [...] interfering with Plaintiff's access to the Courts by obstructing and impeding Plaintiff's access to the United States Postal Service." See ECF 270, P.1. Put another way, DNJ Defendants recognize the First Amended Complaint (FAC) as alleging facts that, if proven, would show that DNJ Defendants, as persons, conducted the affairs of an enterprise through a pattern of 18 U.S.C. 1503, causing damage to Plaintiff in his business and property interests in the USPS services which he purchased; which means that Plaintiff has alleged facts, not conclusions, showing every element of a federal RICO claim. Not only that, but the interception and obstruction of USPS mails is not a function of their judicial capacity; and their use of threats or promises of employment to Judicial Employee John Doe 3, as pleaded in the FAC, are in the judges' administrative capacities as employers; so DNJ Defendants' contention that they're entitled to judicial immunity for that falls flat.

The DNJ Defendants have not raised a defense to claims against them in their individual capacity, so this Court is

---

[1]Hereinafter, the term "DNJ Defendants" collectively refers to Defendants Madeline Cox-Arleo, Renee Marie Bumb, Christine P. O"Hearn, Cathy L. Waldor, and John Doe 3.

respectfully asked allow claims thus pleaded against them in their individual capacity to proceed.

Defendant Cathy Waldor's contention that claims against her should be dismissed on account of the Marshal not effecting service should be denied. Plaintiff has provided USM-285 forms to the Marshal over 8 months ago and the failure of the Clerk and Marshal to effect service upon her is not attributable to Plaintiff.

## STATEMENT OF THE CASE

Plaintiff incorporates by reference the Statement of Facts and Procedural History from his Brief in Opposition to State Defendants' Motion to Dismiss filed with this Court on September 25, 2024 by Prison Mailbox Rule, but never since entered on the docket by the Clerk, from where it is found as ECF _1_ on the docket in <u>In Re Caleb L. Mcgillvary</u>, Dkt. No 24-_3327_ in the U.S. Court of Appeals for the 3rd Circuit (hereinafter, "State BIO"), and sets forth same herein.

## 1. The False Conviction

## A. The Destruction of Evidence During the Investigation

Plaintiff tried prior to his state criminal trial to sue the investigators for destroying material exculpatory evidence which would prove Plaintiff acted in self-defense. This lawsuit was presided over by Defendant Madeline Cox-Arleo, who held that Plaintiff had stated a colorable claim of a Fourth Amendment

violation, which could not proceed until the state criminal proceedings against him were resolved. See McGillvary v. Union County, 2020 U.S. Dist. LEXIS 75909 at *14-15 (D.N.J. Apr. 30, 2020) ("Even if Plaintiff could proceed on a reckless investigation claim under the Fourth Amendment ... if Plaintiff were to succeed on his claim that the evidence Defendants recklessly failed to obtain would exonerate him and establish that he acted in self-defense, that determination would necessarily impugn the validity of his conviction for Galfy's murder").

## B. The Bribery of Witnesses At Trial

Plaintiff discovered subsequent to trial, that his defense counsel had colluded with the prosecutor to rig his trial, and to conceal from Plaintiff evidence of $150,000 each being paid from the family of the rapist who Plaintiff was alleged to have killed, to the workplaces of two key witnesses: the medical examiner who performed the autopsy, and the drug effect expert who stated that the timeframe of the effects described by Plaintiff matched the effects of rape drugs put in his drink by the rapist. Plaintiff filed a lawsuit, in which Arleo held that he stated a colorable claim of a Due Process violation, which could not proceed until the state criminal proceedings against him were resolved. See McGillvary v. Galfy, 2022 U.S. Dist. LEXIS 134998 at *12-13 (D.N.J. July 28, 2022) ("the Court

credits Plaintiff's allegations that Dr. Pandina's testimony, if offered at trial, would have allowed Plaintiff to prove intoxication by clear and convincing evidence, and thus would have changed the outcome of his trial").

## 3. The Habeas Petition At Issue

DNJ Defendants start their brief by calling Plaintiff a murderer, seemingly to invoke cognitive heuristics called "the primacy effect" and "the halo effect"; and thereby to persuade the Court to discount Plaintiff's arguments on account of the NJ State conviction against him. It's just another example of them pushing their false narrative, to provoke the passions of bias, and should be disregarded by this Court as irrelevant to the matter at bar. But since they brought it up, the State of New Jersey has admitted that same conviction was obtained through proceedings that deprived Plaintiff of due process by state investigators' destruction of exculpatory evidence. This admission by the State of NJ, who is a party in privity with DNJ Defendants in this action, occurred by failing to file a responsive statement of material facts to the motion for summary judgment in Plaintiff's habeas proceedings. See McGillvary v. Davis, Dkt. No. 1:22-cv-04185-MRH, ECF 44, 46, 48 (USDC-DNJ) ("Davis"); see also D.N.J. L. Civ. R. 56.1(a) (Any fact not addressed in a responsive statement of material facts is deemed admitted). Plaintiff incorporates by reference that statement of

4

material facts herein from where it is found on that docket. See Id. at ECF 44. That proceeding is therefore not entitled to full faith and credit, because of its admittedly unconstitutional nature. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481 (1982) (due process violations alleged therein render the conviction ineligible for full faith and credit)

## 2. Procedural History of the Instant and Related Matters

As a preliminary matter, Plaintiff has pleaded the meeting of the minds between Menendez and each of the DNJ Defendants as required by Rule 9(b), which states that conditions of the mind, like agreement, may be alleged generally. He incorporates by reference former US Senator Bob Menendez's website from where it is found on the internet, as showing that Menendez touts his services in nominating each of the DNJ Defendants, as judicially noticeable evidence that he performed the services for benefit as consideration as alleged in the FAC. See Fed. R. Evid. 201(b)

## A. Inordinate Delays in Show Cause Order

Plaintiff filed his habeas petition in Davis on June 22, 2022. after 4 months without a show cause order issuing, he petitioned the 3rd Circuit for mandamus. Prior to the 3rd Circuit ruling on the petition, Arleo issued a show cause order on December 1, 2022.

**B. Obstruction of the Davis Proceeding Using the Mails**

Plaintiff incorporates paragraphs "193"-"217" from the FAC as showing numerous times during which the DNJ Defendants, acting in concert with each other and John Doe 3, did obstruct the mail and thereby the proceedings Plaintiff filed in the District Court. Receipts showing Plaintiff incurred concrete financial loss in the form of expenses and delay from this obstruction, are attached as Exhibits J - L of the Appendix to the FAC.

**C. Mail Fraud in the Davis Proceedings**

Plaintiff incorporates paragraphs "196"-"215" of the FAC as showing that DNJ Defendants, acting in concert with each other and John Doe 3, did send misrepresentations through the mail, intending to induce reliance thereon by Plaintiff, which did deprive Plaintiff of the money he spent on the return receipts which he was entitled to honest dates upon.

**D. Obstruction of the Petition to Perpetuate Testimony**

Although Cathy L. Waldor's decision on the Rule 27(b) to deny Plaintiff the ability to perpetuate the testimony of James Galfy pending appeal in Galfy, 2022 U.S. Dist. LEXIS 134998, was a judicial decision; her acting in concert with other DNJ Defendants to thereafter obstruct a separate petition under Rule 27(a) was not. See ECF 84, 285 - 299. Plaintiff incurred concrete

6

financial loss in the form of expenses and delay from this obstruction.

## E. Obstruction of the Galfy and Davis Actions through Administrative Termination

Administrative termination, by its very name, admits to being an administrative act. It does not rule upon the merits, but rather removes a case from the active docket and thereby stymies appellate review or further proceedings. There is no statute or court rule providing for such an act, and the Constitution doesn't contemplate an Article III case or controversy being sidetracked indefinitely. So when Arleo terminated Galfy without adjudication, and O'Hearn terminated Davis without adjudication, they both acted outside their judicial capacities and in the absence of jurisdiction; as well as in concert with other DNJ Defendants. Plaintiff incurred concrete financial loss in the form of expenses and delay from this obstruction.

## F. Obstruction of the Davis Action Through Suspension of the Writ of Habeas Corpus

O'Hearn suspended the writ of habeas corpus for 7 months, in clear retaliation for the filing of this action containing ADA/RA claims. See Davis, ECF 36 (Administrative termination suspending the writ); ECF 45 (Chief Circuit Judge's order reopening the case). There is no statute or court rule that could possibly provide jurisdiction for what the Constitution

7

has plainly prohibited: the suspension of the writ of habeas corpus. Federal courts derive their jurisdiction from the Constitution, and an act openly defying a clear mandate of that same constitution is in the absence of all jurisdiction conferred upon that court by that constitution.

## 3. Claims Against Federal Judge Defendants

DNJ Defendants' contention that Plaintiff's allegations should be dismissed because they are "based on nothing more than information and belief"; or that they admit to being "ascertained with certainty upon discovery"; conflicts with the court rules. The federal rules of civil procedure allow for pleading on information and belief allegations that "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Because Plaintiff's claims are plausibly alleged on information, he is entitled to discovery to shore them up with evidentiary support.

## STANDARD OF REVIEW

## 1. PLAINTIFF IS PRO SE

All documents filed by a pro se litigant are entitled to liberal interpretation. Erickson v Pardus, 551 U.S. 89 (2007)

## 2. FED. R. CIV. P. 8

With the exception of pleading fraud under Rule 9(b); a party is only required to give notice of the facts constituting a

8

claim, not to plead every nuance of the legal theories applicable to the claim. Fed. R. Civ. P. 8(a).

## 3. MOTION TO DISMISS UNDER RULE 12

"[A] RICO case statement [is] a document required by local rules to be filed as a supplement to a RICO complaint. It may be considered as part of the pleadings on a motion to dismiss." LabMD Inc. v. Boback, 2022 U.S. App. LEXIS 24413 at *23 n.12 (CA3 2022).

### LEGAL ARGUMENT
### POINT I: THE PAGE COUNT OF EACH CLAIM IS REASONABLY SHORT, WHEN CONSIDERED AS THOUGH THE CLAIM WERE ITS OWN COMPLAINT; AND PRO SE PLAINTIFF REQUIRES LIBERAL CONSTRUCTION OF A COMPLEX PLEADING REQUIREMENT

Plaintiff incorporates by reference "POINT I" from his Brief in Opposition to the State Defendants' Motion to Dismiss, filed by the prison mailbox rule on September 25, 2024 in this Court (Hereinafter, "State BIO"); and sets forth same fully herein. Additionally, in support of this point, Plaintiff advances the following argument:

## 1. RULE 8(a)

Pleading on information and belief allegations which "will likely have evidentiary support after a reasonable opportunity for ... discovery" is permitted by the court rules. See Fed. R. Civ. P. 11(b)(3). Consequently, first hand knowledge is not necessary on Rule 12 motion, because Plaintiff can rely on hearsay and other inadmissible information to form his beliefs

9

that admissible evidence exists; when Plaintiff has alleged facts which, if proven through discovery, would entitle him to relief. Defendants' contention that such pleading violates the court rules, must fail.

The NJ Election Law Enforcement Commission (ELEC) records attached to ECF 256 show circumstantial evidence of a meeting between Defendants in this matter; by the same token Robert Menendez's Federal Election Commission (FEC) and FBI Investigation records are likely to provide support for Plaintiff's allegations of meetings between DNJ Defendants and Menendez upon discovery. In fact, Menendez's FEC records are judicially noticeable on https://www.opensecrets.org and already show on their face that O'Hearn has structured two $2,500 contributions to avoid the federal reporting requirement for contributions over $3,300. See Fed. R. Evid. 201(b). Discovery of FEC records will likely substantiate a meeting temporally proximate to these transactions, just as the ELEC records did for Scutari.

Plaintiff has provided abundant documentary evidence showing that DNJ Defendants, acting in concert, have colluded with USPS officials in the obstruction of filings to federal proceedings. See Exhibits J - L to the Appendix to the FAC. Otherwise, how else could some mail that's still, a year later, "processing on route to the next facility" be lost; and other such mail entered

onto the docket? The mail has clearly been intercepted by a judicial employee while "On route to the next facility"; and a reasonable juror could find that this is evidence of routine practice of an organization. See Fed. R. Evid. 406.

Circumstantial evidence is sufficient to prove meetings between Menendez and DNJ Defendants, and agreements are conditions of mind which may be alleged generally under Rule 9(b). See, e.g. United States v. Cartwright, 359 F.3d 281, 286 (CA3 2004) (the existence of a conspiratorial agreement may be demonstrated through circumstantial evidence); United States v. Lee, 359 F.3d 194, 207-208 (CA3 2004) (same); United States v. Henley, 360 F.3d 509, 513 (CA6 2004)(same); see also River City Markets v. Fleming Foods West, 960 F.2d 1458, 1463 (CA9 1992) ("We recognize, however, that conspiracies rarely are memorialized in writing and often must be proven by circumstantial evidence"). Intent is likewise susceptible to proof by circumstantial evidence. See, e.g. Webster v. Omnitrition Int'l, Inc., 79 F.3d 776, 786 (CA9 1996); accord, In Re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 364 (CA3 2010). And to establish retaliatory motive, a Plaintiff may rely on circumstantial evidence of "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism

11

coupled with timing that suggests a causal link." <u>Watson v.</u>
<u>Rozum</u>, 834 F.3d 417, 422 (CA3 2016)

## 2. RULE 9(b)

The allegations of mail fraud which DNJ Defendants acted in
concert with John Doe 3 to perpetrate, state the particulars of
who did what, where and when; backed up by Exhibits $J$ - $L$ to
the Appendix to the FAC. which further show the identity of who
did what, where and when. The falsity of the dates on the return
receipts sent through the mail speaks for itself, when compared
to the dates shown on the USPS tracking information.

The particularity requirement of <u>Rule</u> 9(b) applies only to
claims sounding in fraud, not to state law bribery, Hobbs Act
extortion under color of official right, or Money Laundering.
See, e.g. <u>In re Jamuna Real Estate LLC</u>, 365 B.R. 540 (E.D.PA.
2007)(RICO Conspiracy pleading governed by <u>Rule</u> 8(a), not <u>Rule</u>
9(b))(Citing <u>Rose v. Bartle</u>, 871 F.2d 331, 366 (CA3 1989);
<u>Leatherman v. Tarrant County Narcotics Intelligence &</u>
<u>Coordination Unit</u>, 113 S. Ct. 1160, 1163 (1993)); see also
<u>Bartle</u>, 871 F.2d at 356 n.33 (predicate acts not sounding in
fraud may be pleaded under <u>Rule</u> 8(a)'s less exacting standard,
and discovery is warranted for allegations of fraud insufficient
under <u>Rule</u> 9(b))

If the scheme to defraud pleaded in 183-249 of the FAC is
not stated particularly enough, it still provides notice under

12

Rule 8(a) of a conspiracy to conduct the affairs of an association in fact, through a pattern of Money Laundering, State Law Bribery, and Hobbs Act extortion under color of official right; which each may be alleged under Rule 8(a)'s less stringent requirements.

**POINT II: RULE 12 IS SATISFIED BY ALLEGING DATES, TIMES, IDENTITIES, AND NATURE OF THE ACTS; AND STATE OF MIND, INCLUDING AGREEMENTS AND INTENTIONS, MAY BE ALLEGED GENERALLY EVEN UNDER RULE 9(b)**

Plaintiff incorporates by reference "POINT II" from his State BIO; and sets forth same fully herein.

**POINT III: THIS COURT'S FINDINGS ON PLAINTIFF'S MOTION TO CONSOLIDATE PRECLUDE DEFENDANTS' ATTEMPTED INVOCATION OF EITHER HECK-BAR OR THE ROOKER-FELDMAN DOCTRINE**

Plaintiff incorporates by reference "POINT III" from his State BIO; and sets forth same fully herein.

**POINT IV: THIS COURT'S FINDINGS ON PLAINTIFF'S MOTION FOR AD INTERIM RELIEF ARE PRELIMINARY BY NATURE, AND NOT BINDING FOR PURPOSES OF A RULE 12(b) MOTION**

Plaintiff incorporates by reference "POINT VIII" from his State BIO; and sets forth same fully herein.

**POINT V: JUDICIAL DEFENDANTS ARE NOT ENTITLED TO IMMUNITY FOR NON-JUDICIAL INTERCEPTION OF THE MAIL, NOR FOR THE AGREEMENTS THEMSELVES, WHICH ARE PREDICATE ACTS IN THEMSELVES**

**1. THE ACTIONS TAKEN BY FEDERAL JUDGE DEFENDANTS WERE NOT DONE IN THEIR JUDICIAL CAPACITY, BUT RATHER IN THEIR ADMINISTRATIVE ROLES AS EMPLOYERS OFFERING BENEFIT AS CONSIDERATION, OR EXTORTING THROUGH THREAT OF REPRISAL, TO JOHN DOES 1-3 AND JANE DOES 1-2 FOR PERFORMANCE AND NON-PERFORMANCE OF ACTS**

**A. STANDARD OF REVIEW**

There are two exceptions to judicial immunity: "First, a judge is not immune from liability for non-judicial actions, i.e. actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the absence of all jurisdiction." Coello v. DiLeo, 2023 U.S. Dist. LEXIS 168084 at *13-14 (D.N.J. 2023)(Citing Mireles v. Waco, 502 U.S. 9, 11-12 (1991)).

The application of the first exception turns on two factors: (1) "The nature of the act itself, i.e., whether it is a function normally performed by a judge," and (2) "the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Id. at *14 (Citing Stump v. Sparkman, 435 U.S. 349, 362 (1978)); See also Id. at *14-15 (Judicial immunity doesn't apply to Judge who helped Defendant Scutari shirk his role by assuming prosecutorial function). Courts in the Third Circuit have consistently found that a judge's role in a RICO conspiracy is not entitled to judicial immunity, because the agreements constituting honest services

14

fraud, Hobbs Act extortion under color of official right, or state law bribery "are non-judicial acts that are not subject to absolute judicial immunity." Clark v. Conahan, 737 F. Supp. 2d 239, 256-257 (M.D.PA. 2010); Wallace v. Powell, 2009 WL 4051974, at *8 (M.D.PA. 2009)(Delineating Judicial and non-judicial acts); Dawn v. Ciavarella, 2010 WL 3122858, at *3-5 (M.D.PA. 2010); Gillette v. Ciavarella, 2012 U.S. Dist. LEXIS 11624 at *22 (M.D.PA. 2012)(Finding Pinkerton[2] Liability claim against Judge for his role in RICO Conspiracy was not entitled to judicial immunity, where it was based on judge's extrajudicial meetings and agreements as overt acts in furtherance of the conspiracy's objectives)

Decisions made by judges concerning employment are not entitled to immunity. Forrester v. White, 484 U.S. 219, 229-230 (1988). Such decisions include the offer of, or threat of losing, employment as incentive for performing unlawful acts.

**B. ANALYSIS**

**i.) CERTAIN ACTIONS TAKEN BY JUDGE DEFENDANTS WERE IN THE COMPLETE ABSENCE OF JURISDICTION**

Federal Courts derive their jurisdiction from Article III of the constitution, which enables Congress to create Courts and enact statutes conferring jurisdiction thereon. Congress has enacted 28 U.S.C. 1657(a), which conditions the grant of a

---

[2] Pinkerton v. United States, 328 U.S. 640, 646 (1946)

15

federal court's jurisdiction on expediting habeas petitions under 28 U.S.C. 2241 et seq.; of which type Plaintiff's habeas petition at common issue of law and fact is one.; See ECF 84, 280. But even if the Court might somehow have jurisdiction for neglecting a Statute enacted by Congress conditioning their jurisdiction, the suspension of the writ of habeas corpus is specifically prohibited by the same Constitution that confers upon Congress its capacity to create Federal Courts. Specifically, the Suspension Clause states that "the writ of habeas corpus shall not be suspended." U.S. Const. Art. I, 9, cl. 2. The administrative termination of Plaintiff's habeas petition effectively suspended the writ, without recourse to appellate review, for an indefinite time. See Penn W. Assocs. Inc. v. Cohen, 371 F.3d 118 (CA3 2004)(Administrative termination does not allow appellate review). This violation of the Suspension Clause exceeded the powers conferred by the Constitution, and rendered Defendant Christine P. O'Hearn's actions "in the clear absence of all jurisdiction." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 352 (1871); accord, Stump, 435 U.S. at 356-357; See also Coello, 2023 U.S. Dist. LEXIS 168084 at *13-15 (Finding exception to judicial immunity in another case involving Defendant Scutari as defendant).

16

## ii.) **CERTAIN ACTIONS TAKEN BY JUDICIAL DEFENDANTS WERE IN THEIR ADMINISTRATIVE, NOT JUDICIAL, CAPACITIES**

In the alternative to the lack of jurisdiction, the term "administrative termination" admits by its very substance that the act was performed in the judge's administrative, not judicial, capacity. The Sixth Circuit has held that such moratoriums on writs are administrative acts not entitled to judicial immunity, and this Court is urged to find the same. See Morrison v. Lipscomb, 877 F.2d 463, 465-466 (CA6 1989)(Order imposing a two-week moratorium on certain writs during the holiday season; "Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one"); accord Bryant v. Sylvester, 1994 U.S. Dist. LEXIS 8501 at *4 (E.D.Pa. June 20, 1994).

What's proscribed by both the Hobbs Act and the State Bribery Statutes is not the official act itself, but the agreement to accept benefit as consideration for its performance. See United States v. Salahuddin, 765 F.3d 329, 342 (CA3 2014) ("It is the illegal agreement that is criminalized in Hobbs Act conspiracy"); United States v. Ferriero, 866 F.3d 107, 125 (CA3 2017) ("New Jersey's bribery statute only punishes party officials' corrupt bargains"). The predicate acts for which each federal judge defendant is liable, as overt acts in furtherance of the RICO conspiracy they form a part of, are

17

complete upon the agreement to accept benefit as consideration for performance of an act. See Ferriero, 866 F.3d at 125. This agreement is indisputably made outside of the judicial capacity, and in the absence of all jurisdiction to do so, and this agreement is the overt act which makes DNJ Defendants liable under Pinkerton for, when their codefendants, acting pursuant to the conspiracy, obstructed Plaintiff's federal proceedings and caused him expense and delay thereby. See Malley-Duff & Assoc. v. Crown Life Ins. Co., 792 F.2d 341, 355 (CA3 1986), aff'd on other grounds, 483 U.S. 143 (1987) (Delay, added expenses and inconvenience caused by defendants interference with a lawsuit sufficient to meet injury requirement under RICO). Plaintiff has alleged each of these agreements pursuant to the notice requirements of Rule 8(a), and it is clear that, no matter whether the bargained-for act was judicial in nature, the bargain itself and agreement could not have been: no statute nor the constitution authorizes federal judges to peddle influence in backroom deals with an unregistered foreign agent.

**a.) Judge Christine P. O'Hearn**

Plaintiff has alleged that O'Hearn met with Menendez on or about 9/24/11; and has alleged conditions of mind of their agreement pursuant to Rule 9(b), namely to exchange beneficial services as consideration for performance of judicial acts. See ECF 84 at 183. Plaintiff has alleged similarly that O'Hearn met

18

and ratified that agreement, and made further agreements, with Arleo; Id. at 191; with Bumb; Id. at 192; and with John Doe 3; Id. at 287.

Suspension of the writ of habeas Corpus, even for a moment or through administrative termination, is an act in the absence of all constitutional authority. Compare ECF 84, 278-284; with U.S. Const. Art. I, 9, cl. 2.

**b.) Judge Madeline Cox-Arleo**

Plaintiff has likewise alleged that Arleo met with Menendez; and has alleged conditions of mind of their agreement pursuant to Rule 9(b), namely to exchange beneficial services as consideration for performance of judicial acts. See ECF 84, 185. Plaintiff has alleged similarly that Arleo met and ratified that agreement, and made further agreements, with Waldor; Id. at 186; and with O'Hearn; Id. at 191. Additionally, the administrative termination of an active case is administrative by its very nature, and does not involve the judicial capacity.

**c.) Judge Renee Marie Bumb**

Plaintiff has likewise alleged that Bumb met with O'Hearn, and has alleged conditions of mind of their agreement pursuant to Rule 9(b), namely to exchange beneficial services as consideration for performance of judicial acts. Id. at 192. Plaintiff has alleged similarly that Bumb met and ratified that

19

agreement and made further agreements with John Doe 3; Id. at 287.

### d.) Judge Cathy L. Waldor

Plaintiff has likewise alleged that Waldor met with Arleo, and has alleged conditions of mind of their agreement pursuant to Rule 9(b), namely to exchange beneficial services as consideration for performance of judicial acts. Id. at 186.

## 2. THE ACTIONS TAKEN BY JOHN DOE 3 WERE OUTSIDE THE SCOPE OF HIS DUTIES AS A JUDICIAL EMPLOYEE, AND HE WAS REASONABLY APPRISED THAT THEY WOULD BE UNLAWFUL AND DEPRIVE PLAINTIFF OF CONSTITUTIONAL RIGHTS

### A. STANDARD OF REVIEW

In determining whether to grant quasi-judicial immunity, courts must take a functional approach, focusing on "the nature of the function performed, not the identity of the actor who performed it." Light v. Haws, 472 F.3d 75, 78 (CA3 2007). Where a government actor is acting in his or her investigative or administrative capacity, those actions are only protected by qualified immunity. Kulwicki v. Dawson, 969 F.2d 1454, 1463 (CA3 1992). But qualified immunity does not protect officials from suit for conduct that violates a clearly established statutory or constitutional right of which a reasonable person would be aware. Ibid.

**B. ANALYSIS**

**i.) QUASI-JUDICIAL IMMUNITY DOESN'T APPLY TO JOHN DOE 3**

Extrajudicial agreements, intercepting mail, and thereafter obstructing it are not judicial functions. See ECF 84, 99-102, 189, 287, 295 (Pleading that John Doe 3 agreed to act in furtherance of RICO Conspiracy, in which he would accept employment benefits as consideration for performance and non-performance of acts); See also Id. at 196-215, 285-299 (Listing incidents in which the alleged interception and obstruction occurred). Likewise, although filing documents onto the docket would be a judicial function, obstructing the documents instead of filing them is not. Ibid.

**ii.) QUALIFIED IMMUNITY DOESN'T APPLY TO JOHN DOE 3**

Although Plaintiff does not plead a standalone claim under criminal statutes, John Doe 3 did more than deprive Plaintiff of his Due Process, Correspondence, and Petition Rights, as alleged above, his conduct was also obstruction of his mails, and in violation of clear mandates. See 18 U.S.C. 1503 (prohibiting endeavors to obstruct or subvert federal official proceedings); D.N.J. L. Civ. R. 5.1 et seq. (Requiring the Clerk to file documents onto the docket and to enter paper documents onto electronic records upon receipt of same); ECF 84, 196-215, 285-299 (Pleading acts which violated this mandate as quo for quid in quid pro quo arrangements). First of all, a reasonable person

21

would be aware that Plaintiff had a right for his legal mail to be delivered. Secondly, a reasonable person would be aware of such mandates, because they worked in a place where the mandates were recoursed to all the time. And because a reasonable person would be aware the behavior was unlawful, when the conduct also infringes upon Plaintiff's Constitutional rights, qualified immunity cannot apply to it.

## POINT VI: PLAINTIFF HAS STATED CLAIMS UNDER 1983 AND BIVENS[3] FOR DEPRIVATION OF HIS CONSTITUTIONAL RIGHTS

DNJ Defendants' counsel admits to not representing them in their individual capacity, so all claims against them in their individual capacities should be allowed to proceed. Contrary to DNJ Defendants' assertions, Davis v. Passman, 442 U.S. 228 (1979) did not concern only gender-discrimination in employment: it concerned the deprivation of property and liberty-interests without due process. Just because the property and liberty interests at issue in that case were employment back-pay; doesn't change the fact that the Bivens claims was for the deprivation of those interests without Due Process. In the instant case, Plaintiff was deprived of his Due Process rights, and that makes the Bivens context of Davis wholly applicable to the case at bar.

_____

[3] Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)

22

Intercepting mail is outside the scope of federal employment, but the effect of depriving Plaintiff of his constitutional right to Due Process was under color of federal law. So whether the Due Process he was deprived of was a timely disposition of his federal cases; Heiser v. Ryan, 15 F.3d 299, 307 (CA3 1991) (a cause of action for deprivation of due process exists for delay of collateral proceedings challenging conviction); accord Madden v. Myers, 102 F.3d 74, 76 (CA3 1996); Hassine v. Zimmerman, 160 F.3d 941, 954 (CA3 1998); or the expenses of his parcels and postage without notice and a hearing; See Hamdi v. Rumsfeld, 542 U.S. 507, 533 (2004); he was deprived of the Due Process which Davis created a context for a Bivens action to remedy.

## 1. CORRESPONDENCE (1st, 5th, & 14th Amendments)

Prisoners have a 1st Amendment right to communicate by mail. Procunier v. Martinez, 416 U.S. 396, 408-409 (1974). Restrictions on outgoing mail cannot be greater than "necessary or essential" to protect "important or substantial interests. See Thornburgh v. Abbott, 490 U.S. 401, 413-414 (1989); Nasir v. Morgan, 350 F.3d 366, 373 (CA3 2003)(The Turner standard doesn't apply to outgoing mail)(citing Turner v. Safley, 482 U.S. 539, 555-556 (1974)).

The right to correspond is a liberty interest protected by due process, and prisoners are entitled to notice, a reasonable

23

opportunity to protest, and referral of complaints to someone other than the censor when outgoing mail is rejected. Procunier, 416 U.S. at 417-419.

## A. U.S. Dist, Ct - D.N.J. Obstructionists

Plaintiff has alleged that his outgoing mail was obstructed by D.N.J. officials numerous times; and that his mail was restricted from being filed at its destination without affording him due process. ECF 84, 193-219

## B. U.S. Dist. Ct. - D.N.J. Rule 27(a)

Plaintiff has alleged that his outgoing mail was obstructed by D.N.J. officials; and that his mail was restricted from being filed at its destination without affording him due process. ECF 84, 285-299

## 2. ACCESS TO THE COURTS (Privileges & Immunities Clause of Art. IV, 1st, 5th, and 14th Amendments)

Plaintiff has a constitutional right to access the courts. McCarthy v. Madigan, 503 U.S. 140, 153 (1992); Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002). Interference with this right is actionable under 1983 and Bivens. See, e.g. Harbury, 536 U.S. at 414, 416 n.13. A Plaintiff must show that he was frustrated or impeded in pursuing a non-frivolous claim. Harbury, 536 U.S. at 415.

**A. PLAINTIFF HAS ALLEGED THE EXISTENCE OF NON-FRIVOLOUS CLAIMS WHICH HIS RIGHT TO ACCESS THE COURTS WAS INTERFERED WITH IN REGARDS TO**

**i.) U.S. Dist. Ct. - D.N.J. Habeas**

Plaintiff has incorporated by reference his habeas petition; ECF 84, 188; which shows the existence of a non-frivolous claim that was administratively terminated because of Defendant Christine P. O'Hearn to obstruct his access to the Courts, as alleged in the FAC; ECF 84, 278-284.

**ii.) U.S. Dist. Ct. - D.N.J. Rule 27(a)**

Plaintiff has incorporated by reference his Rule 27(a) petition; ECF 84, 285; which shows the existence of a non-frivolous claim to a deposition that was obstructed because of Defendants John Doe 3, Bumb, and O'Hearn acting in concert with each other to obstruct his access to the Courts, as alleged in the FAC; ECF 84, 285-299.

**3. PROCEDURAL DUE PROCESS & SUSPENSION CLAUSE (5th & 14th Amendments, U.S. Const. Art. I, 9, cl. 2)**

The 3rd Circuit has held that the 5th Amendment Right to Due Process is implicated by an inordinate delay in the resolution of a habeas petition:

> "We stated [in Madden v Myers] that 'although this [8 month] delay is of concern, it does not yet rise to the level of a denial of due process', implying that at some point, delay by the district court could become so excessive as to [constitute a deprivation of Due Process." Hassine, 160 F.3d at 954 (Quoting Madden, 102 F.3d at 76; See also Hamdi, 542 U.S. at

25

533 (Due process is the right to be heard within a meaningful time)

Aside and apart from the undue delay, the administrative termination of Plaintiff's habeas petition without adjudication, even for a moment, is a violation of the Suspension Clause of the Constitution. U.S. Const. Art. I, 9, cl. 2.

Plaintiff has pleaded that his habeas corpus petition was delayed an undue amount of time, since June 22, 2022, by the concerted efforts of multiple defendants; ECF 84, 187-195, 197-215; and that the delay was in direct contravention of jurisdictional statutes; ECF 84, 219, 280.

Plaintiff has also pleaded that his habeas petition was administratively terminated without jurisdiction by Defendant O'Hearn, which is a violation of the Suspension Clause; ECF 84, 278-284.

### POINT VII: PLAINTIFF HAS PLEADED SEVERAL INSTANCES OF RETALIATION FOR EXERCISE OF HIS RIGHTS UNDER THE ADA OR THE RA

The Court is not required to find a new context for Bivens, when a cause of action already exists under federal statute. Two such causes exist, and have been pleaded in the FAC:

### 1.   STANDARD FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT OR THE REHABILITATION ACT

To establish a violation of 42 U.S.C. 12132 (ADA), a plaintiff must allege that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation

26

in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." Johnson v. Amtrak, 390 Fed. Appx. 109, 113 (CA3 2010).

Additionally, 42 U.S.C. 12203 prohibits retaliation "against any individual for exercising their rights under [the ADA]"; or "against any individual because such individual has opposed any act or practice made unlawful by [the ADA]." Ibid.

The Rehabilitation Act, 28 U.S.C. 794 ("RA") is substantially the same, but requires that the public entity have received federal funds. Alexander v. Choate, 469 U.S. 287, 301 (1985).

Plaintiff alleged a colorable claim of discrimination against himself for his recognized ADA disability of Post-Traumatic Stress Disorder ("PTSD"); or in the alternative, failure to accommodate his PTSD; in his Initial Complaint. See ECF 1. Although the initial complaint was superseded, this doesn't change the fact that he has alleged in his First Amended Complaint that he was retaliated against because of his opposition to such discrimination, and exercise of his rights to accommodation of his PTSD. See ECF 84, Count 3, Count 10, Count 12, Count 14, Count 15. Plaintiff has alleged that the Defendants responsible for this retaliation were employed by agencies that receive federal funds. See "2A-2B" below.

27

## 2. ANALYSIS OF SPECIFIC INSTANCES OF RETALIATION

## A. RETALIATION BY O'HEARN FOR EXERCISE OF RIGHTS UNDER ADA/RA

Plaintiff filed this action asserting ADA/RA claims of discrimination and failure to accommodate, naming Christine P. O'Hearn as a defendant. ECF 1. Defendant O'Hearn retaliated against Plaintiff for his exercise of his right to sue under the ADA/RA by administratively terminating his habeas petition and thereby threatening him with an indefinite deprivation of due process. ECF 84, 279-281. A person of reasonable firmness would be deterred by the threat. ECF 84, 281. The U.S.D.C.-D.N.J. receives federal funds. ECF 84, 219.

## B. RETALIATION BY O'HEARN, BUMB, AND JOHN DOE 3 FOR EXERCISE OF RIGHT TO PETITION UNDER THE ADA/RA

Plaintiff filed this action asserting ADA/RA claims of discrimination and failure to accommodate, naming as defendants in this action Scutari, Romankow, and members of the NJAJ. ECF 1. Subsequent to the filing of the initial complaint in this action, Defendant filed a petition under Fed. R. Civ. P. 27(a). ECF 84, 285-292. John Doe 3, acting in concert with O'Hearn and Bumb, retaliated against Plaintiff for his exercise of his right to sue under the ADA/RA by refusing to file his petition. ECF 84, 287-291. A person of reasonable firmness would be deterred by the threat of being unable to depose a witness who is of advanced years, and who therefore may not live much longer,

28

which witness is likely to have exculpatory evidence. ECF 84, 285 (incorporating Exhibit J by reference). The U.S.D.C.-D.N.J. receives federal funds. ECF 84, 219.

**POINT VIII: FEDERAL JUDICIAL DEFENDANTS ACCEPTED BENEFITS AS CONSIDERATION CONSTITUTING STATE LAW BRIBERY, FOR THE OBSTRUCTION OF FEDERAL PROCEEDINGS, AND FOR THE EXTORTION UNDER COLOR OF OFFICIAL RIGHT OF ACTS ENDEAVORING TO OBSTRUCT FEDERAL PROCEEDINGS, WHICH PLAINTIFF WAS DAMAGED THEREBY IN EXPENSES AND DELAYS IN HIS CASES**

Plaintiff incorporates by reference the Statement of Facts and POINT III from ECF 195; the Statement of Facts and POINT III from ECF 196; the Statement of Facts and POINT V from ECF 197; the Statement of Facts and POINT III from ECF 198; the Statement of Facts and POINT III from ECF 199; the Statement of Facts and POINT III from ECF 200; the Statement of Facts and POINT III from ECF 201; the Statement of Facts and POINT III from ECF 202; the Statement of Facts and POINT III from ECF 203; the Statement of Facts and POINT III from ECF 204; the Statement of Facts and POINT III from ECF 205; and the Statement of Facts and POINT V from his State BIO; and sets forth same herein in support of his RICO Claim against Federal Judicial Defendants.

Additionally, Plaintiff sets forth the legal Standards and analytical framework of each of those Legal Argument Points in application to the following analysis of the facts:

29

## 1. Formation of the enterprises

## A. The Bid Rigging Syndicate

Plaintiff has alleged circumstances of meetings between Theodore Romankow (Romankow), Robert Ellenport (Ellenport), and Robert Menendez (Menendez); with related transactions from Ellenport to Menendez on 10/24/06 and 10/17/18; and from Romankow to Menendez on 6/30/18, 9/18/18, 10/24/18, 10/21/19, and 7/2/21; with specific amounts, known from ELEC records which form circumstantial evidence which plausibly shows a meeting between each of those parties had occurred at or around those times; ECF 84 at 96. Plaintiff has similarly alleged transactions from Romankow to Nicholas Scutari (Scutari); Id. at 96; and to Phil Murphy (Murphy); Id. at 97; at certain dates and times, and in certain amounts. Plaintiff has alleged that there was a meeting of the minds during these meetings, which state of mind was alleged generally pursuant to Rule 9(b), in which each party to the meetings formed an agreement to conduct the affairs of an association in fact through a pattern of bribery, money laundering, and extortion under color of official right; specifically alleging the tenor of their agreement, which each party ratified, to wilfully prevent or subvert any legal challenges to the real estate deals of the Bid Rigging Syndicate (BRS) through use of positions on the Senate Judiciary Committee to extort candidates for judgeships under color of official

right and offer benefits as consideration to same in violation of state law bribery statutes. See ECF 84 at 96 (Agreed to use judiciary committee), 98 (ratified agreement), 99 (agreed to act in concert to obstruct challenges to Fort Monmouth deal).

Plaintiff knows through personal knowledge that RawTV, an admitted agent of Netflix, contacted him around June of 2021; and on this information believes that they simultaneously contacted Romankow, who ended up appearing in their documentary about Plaintiff. The temporal proximity of these contacts, to FMERA issuing an unprecedented request for offers to purchase a mega parcel on July 21, 2021, is plausible circumstantial evidence that the meeting described in "99" occurred, albeit perhaps Plaintiff's complaint needs to be amended to reflect the discovery provided by FMERA during the motion for ad interim relief, which reveals the dates to be prior to those stated on information and belief in the FAC.

**B. The Federal Judicial Defendants' Quid Pro Quo Arrangements**

Plaintiff has alleged that Christine P. O'Hearn (O'Hearn) met with Menendez on or about 9/24/11, and alleged conditions of mind of their agreement pursuant to Rule 9(b); Id. at 183. FEC records showing O'Hearn's two $2,500 transactions on 9/25/11 to Menendez, evincing circumstantial evidence of the meeting and direct evidence of money laundering, are judicially noticeable. See https://www.opensecrets.org; Fed. R. Evid. 201(b). Likewise

31

with Arleo, Defendant alleged a meeting on a certain date between Madeline Cox-Arleo (Arleo) and Menendez, the conditions of mind of their agreement stated generally pursuant to Rule 9(b); Id. at 185; and a similar meeting and agreement between Arleo and Cathy L. Waldor (Waldor); Id. at 186; between Arleo and O'Hearn; Id. at 191; between O'Hearn and Renee Marie Bumb (Bumb); Id. at 192; and between John Doe 3, O'Hearn, and Bumb; Id. at 287. In each of these meetings, the agreement of the BRS was ratified, and the coconspirators to each meeting agreed to conduct the affairs of that association in fact through a pattern of extortion under color of official right, state law bribery, and obstruction of justice.

## 2. The Rigging of the Fort Monmouth Real Estate Bid

Plaintiff incorporates by reference "POINT V, a-i" from his Brief in Opposition to State Defendants' Motion to Dismiss, filed on September 25, 2024 pursuant to the prison mailbox rule, and sets forth same fully herein.

## 3. Plaintiff's Obstructed Filings

Plaintiff has alleged that the rigged bid between Netflix and Fort Monmouth was contingent on Netflix producing a documentary film that conformed to the narrative imposed by the BRS. ECF 84 at 99. Logically flowing from that premise, is the conclusion that any proceedings which challenged that narrative also challenged the contingency of the real estate deal, and

32

were subject to the agreement to obstruct. Id. at 101-102; see also Id. at 183 (O'Hearn ratifies agreement); Id. at 185 (Arleo ratifies agreement); Id. at 186 (Waldor ratifies agreement); Id. at 192 (Bumb ratifies agreement); Id. 287 (John Doe 3 ratifies agreement). Pursuant to the agreements to conduct the affairs of the BRS enterprise through a pattern of obstruction, Arleo exercised her administrative function to issue a standing order to her employees, which include John Doe 3; See Id. at 287; to obstruct federal proceedings that would challenge the narrative of the documentary film: by showing bias in NJ State legal proceedings, by exonerating Plaintiff, or by creating evidence impugning the investigation of him. Id. at 189. These employees carried out Arleo's orders by obstructing numerous filings through interception of the USPS mails prior to being entered onto the docket; Id. at 197, 199, 205, 208, 209, 210, 212, 213, 214; and by fraudulently sending representations of false delivery dates through the US Mails; Id. at 196, 201, 204, 207, 211.

## 4. The Petition for Perpetuation of Testimony

Plaintiff has alleged that he sent an petition and accompanying documents required to initiate an action to perpetuate the testimony of James Galfy, pursuant to Fed. R. Civ. P. 27(a), to the U.S. District Court. A copy of the petition and supporting documents is attached to the complaint

at Exhibit $\int$. The postage remit evidencing the expense of mailing, and weight of the package, is attached as Exhibit $\mathsf{K}$. The return receipt signed by John Doe 3, evidencing proof of receipt shown by the tracking information, is attached as Exhibit $\mathsf{L}$. See ECF 84, Appendix. Yet, despite the incontrovertible evidence that the package arrived at the Courthouse, it was intercepted prior to being entered onto the docket and obstructed, causing Plaintiff concrete financial loss through expense and delay.

## 5. The Second Quid Pro Quo Arrangements

Count Fifteen and Sixteen involve State Law Bribery and are not subject to Rule 9(b)'s particularity requirements for fraud. Plaintiff has alleged that John Doe 3 met with other DNJ Defendants, which is plausible by the fact they work in the same building, and has alleged the state of mind generally that they formed an agreement in furtherance of the bid-rigging conspiracy, which was ratified by them, that as quo John Doe 3 would obstruct and subvert the petition; and as quid Scutari, Murphy, and Romankow would provide John Doe 3 money and career advancement opportunities. John Doe 3 did in fact obstruct and subvert the petition prior to it being entered onto the docket, as the petition is not shown on the docket for the U.S. District Court, despite the tracking information showing delivery there. The fact of career advancement quid offered for these quos can

34

be shown by the fact that John Doe 3 is a judicial employee whose employment is determined by other DNJ Defendants; and Plaintiff has alleged that DNJ Defendants have bribed Judicial offers of gaining or keeping employment, to induce their agreement to perform and nonperform acts to subvert legal challenges to the Fort Monmouth real estate deal. See ECF 84, 99-102. These pleaded threats and offers of employment are so clearly within the judges' administrative capacity of hiring and firing, that any argument for judicial immunity is frivolous.

DNJ Defendants thereby conducted the affairs of the association in fact through this pattern of State Law Bribery. This quid pro quo arrangement is part of the same pattern of racketeering activity as Count One, but has damaged Plaintiff in the waste of his costs of preparing and mailing a petition that was obstructed by the pattern of racketeering activity, depriving him of the property right in his money embodied thereby.

## 6. The Obstruction of the Davis Case

Plaintiff has alleged that he filed the Davis case as a federal proceeding, in the U.S. District Court. Id. at 188. This federal proceeding was obstructed by O'Hearn, acting in concert with the other DNJ Defendants, through suspension of the writ of habeas corpus on January 9, 2024, causing Plaintiff concrete financial loss through expense and delay. Id. at 278-284.

35

Plaintiff has alleged that this act was done pursuant to a quid pro quo arrangement, the agreement of which is a predicate act under 18 U.S.C. 1961(d). Id. at 183.

## 7. The Third Quid Pro Quo Arrangements

Count Fourteen involves Obstruction of Justice and State Law Bribery and are not subject to Rule 9(b)'s particularity requirements for fraud. Plaintiff has alleged that O'Hearn met with Menendez, which is plausible by the fact she has made transactions to Menendez structured to avoid reporting requirements of federal law, and has alleged the state of mind generally that they formed an agreement in furtherance of the bid-rigging conspiracy, which was ratified by them, that as quo O'Hearn would obstruct and subvert federal proceedings that challenge interests of the bid-rigging conspiracy; and as quid Menendez would lobby for her appointment to the federal bench. Plaintiff has alleged that, pursuant to this agreement, O'Hearn did in fact obstruct and subvert the Davis case by administratively terminating it, suspending the writ of habeas corpus. Id. at 189, 191, 192, 278-284.

DNJ Defendants thereby conducted the affairs of the association in fact through this pattern of State Law Bribery and Obstruction of justice. This quid pro quo arrangement is part of the same pattern of racketeering activity as Count One, but has damaged Plaintiff in the expenses and delays in the

36

federal proceeding that was obstructed by the pattern of racketeering activity, depriving him of the property right in his money embodied thereby.

## 8. The Obstruction of the Galfy Case

Plaintiff has alleged that he filed the Galfy case as a federal proceeding, in the U.S. District Court. Id. at 196, 216-217. This federal proceeding was obstructed by Arleo, acting in concert with the other DNJ Defendants, through administrative termination on May 8, 2024, causing Plaintiff concrete financial loss through expense and delay. Plaintiff has alleged that this act was done pursuant to a quid pro quo arrangement, the agreement of which is a predicate act under 18 U.S.C. 1961(d). Id. at 185.

## 9. The Fourth Quid Pro Quo Arrangement

Obstruction of Justice and State Law Bribery and are not subject to Rule 9(b)'s particularity requirements for fraud. Plaintiff has alleged that Arleo met with Menendez, which is plausible by her attendance at functions to which Menendez was privy in his role in the Democratic network to which Scutari belonged, and has alleged the state of mind generally that they formed an agreement in furtherance of the bid-rigging conspiracy, which was ratified by them, that as quo Arleo would obstruct and subvert federal proceedings that challenge interests of the bid-rigging conspiracy; and as quid Menendez

would lobby for her appointment to the federal bench. Id. at 185. Arleo did in fact obstruct and subvert the Galfy case by administratively terminating it.

DNJ Defendants thereby conducted the affairs of the association in fact through this pattern of State Law Bribery and Obstruction of justice. This quid pro quo arrangement is part of the same pattern of racketeering activity as Count One, but has damaged Plaintiff in the expenses and delays in the federal proceeding that was obstructed by the pattern of racketeering activity, depriving him of the property right in his money embodied thereby.

### POINT IX: DEFENDANTS TRY TO IMPOSE A SPECIFIC PLEADING REQUIREMENT ON STATE OF MIND, WHICH RULE 9(b) PERMITS TO BE PLEADED GENERALLY

Plaintiff incorporates by reference "POINT IX" from his State BIO; and sets forth same fully herein.

### POINT X: EVEN IF THE FAC IS RATHER LONG AND CONTAINS SOME SURPLUSAGE, THIS IS A COMPLEX CASE REQUIRING PARTICULARIZED PLEADING, PLAINTIFF IS PRO SE, AND THE FAC SHOULD BE LIBERALLY CONSTRUED DESPITE ITS LENGTH

Plaintiff incorporates by reference "POINT X" from his State BIO; and sets forth same fully herein.

**POINT XI: PLAINTIFF HAS PLEADED FACTS SHOWING AN OBSTRUCTION OF JUSTICE CAUSING HIM EXPENSES, WHICH IS REDRESSABLE UNDER RICO, EVEN IF HE HAS NOT SPECIFICALLY PLEADED THE LEGAL THEORY OR STATUTE OF OBSTRUCTION, 18 U.S.C. 1503, A PREDICATE ACT UNDER 18 U.S.C. 1961(d)**

Plaintiff incorporates by reference "POINT XI" from his State BIO; and sets forth same fully herein.

## CONCLUSION

The DNJ Defendant's motion to dismiss fails to rebut Plaintiff's meritorious claims. For all these reasons, Plaintiff respectfully urges the Court to deny Defendants' motion. In the alternative, should be granted leave to amend his FAC if the Court finds the claims in need of better pro se pleading.

Respectfully Submitted,

Date: 12/30/24

_____

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

## CERTIFICATION OF PLAINTIFF

I, Caleb L. McGillvary, hereby certify that this document is 40 pages, and is prepared with double-spaced 12 point non-proportional font (Courier New 12). My document therefore complies with the page length and formatting requirements of D.N.J. L. Civ. R. 7.2(b), (d).

_____

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ
08625-0861

C MCGILLVARY
#1222665/SBI #1023176
NJSP PO Box 861
TRENTON, NJ
08625

Retail

U.S. POSTAGE PAID
FCM LG ENV
TRENTON, NJ 08650
JAN 03, 2025

UNITED STATES
POSTAL SERVICE

08101

$12.66

RDC 99

S2324N503558-37

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**™

7012 0470 0002 1138 3137

RECEIVED

JAN - 7 2025

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ

CLERK
US DIST. CT. - DNJ
4TH & COOPER STS.
CAMDEN, NJ
08101-2797

RETURN RECEIPT
REQUESTED

RECEIVED

JAN - 7 2025

AT 8:30_____M
CLERK, U.S. DISTRICT COURT - DNJ



LEGAL MAIL