IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CALEB L. MCGILLVARY, | : | |
|     Plaintiff, | : | No. 23-cv-22605-JMY |
| | : | |
| vs. | : | |
| | : | |
| NICHOLAS SCUTARI, et al., | : | |
|     Defendants. | : | |

**MEMORANDUM**

**Younge, J.**                                                                                                    February 6, 2025

Currently before this Court is a motion to dismiss Plaintiff's first Amended Complaint filed by Defendants, Governor Philip D. Murphy, the Office of the New Jersey Governor, the New Jersey Legislature (improperly pled separately as the "New Jersey Senate" and "New Jersey State Assembly"), Karen Cassidy, Robert Kirsch, Theodore Romankow, Nicholas Scutari and Linda D. Stender (collectively referred to as the "State Defendants"). (Motion to Dismiss, ECF No. 193.)

The Court finds the State Defendants' motion to dismiss appropriate for resolution without oral argument. See Fed. R. Civ. P. 78, L.R. 7.1(f). For the reasons set forth below, the State Defendants' motions to dismiss will be granted, and all claims in the first Amended Complaint asserted against the State Defendants will be dismissed from this litigation. Plaintiff will not be permitted to file an amended complaint to assert renewed claims against these Defendants.

This Court previously entered a series of Orders and a Memorandum in connection with its decision to grant motions to dismiss that were filed by co-Defendants in this matter. (Memorandum, ECF No. 309; Orders, ECF No. 310 – 323.) The Memorandum that was previously entered by this Court sets forth the relevant factual and procedural history related to

this litigation along with the applicable legal standard. Therefore, it would be redundant to reiterate herein again the factual and procedural history or applicable legal standard, and this Court will refer the reader to its Memorandum for a discussion on those topics.

**I.      Factual Allegations in the First Amended Complaint Directed to the State Defendants:**

Plaintiff alleges that Governor Murphy agreed to join former Union County Prosecutor Theodore Romankow[1] and Senator Scutari in a bid-rigging conspiracy that ultimately led to Netflix's purchase of Fort Monmouth. (*Am Compl.* ¶ 97, ECF No. 84.) Plaintiff alleges that Governor Murphy accepted modest transactions from Romankow ranging from $1,000 to $2,500 in support of a bid-rigging conspiracy. (*Id.* ¶ 97.) Plaintiff also alleges that Governor Murphy was a member of the New Jersey Association of Justice (hereinafter "NJAJ"). (*Id.* ¶ 92.)

Plaintiff alleges that Senator Scutari, along with former Prosecutor Romankow, led a bid-rigging conspiracy that facilitated Netflix's purchase of Fort Monmouth. (*Id.* ¶ 1.) Plaintiff also alleges that Senator Scutari is a member of the NJAJ. *Id*. ¶ 92. Plaintiff states that Senator Scutari misused his position as a member of the New Jersey Senate Judiciary Committee to extort state judges and state judiciary employees in an attempt to thwart legal challenges to the sale of public lands to Netflix. (*Id.* ¶ 96.) Plaintiff alleges that Senator Scutari accepted monetary transactions from Romankow, ranging from $500 to $2,500, as consideration. (*Id.* ¶ 96.)

As to former Union County Prosecutor Romankow, Plaintiff alleges that Romankow led a bid-rigging syndicate with Senator Scutari. (*Id.* ¶ 1.) Plaintiff claims that Romankow was a member of the NJAJ who was authorized to conduct meetings, negotiations, execute agreements,

---

[1] Theodore Romankow, Esquire was the Union County Prosecutor at the time when Plaintiff was investigated, placed on trial, and ultimately convicted for the murder of Joseph Galfy, Jr.

and meet with both politicians and clients along with appearing as *amicus curiae* to weaken the positions of parties adverse to the NJAJ's interests. (*Id.* ¶¶ 92, 93.) Plaintiff alleges that Romankow and others created a bid rigging syndicate conspiracy and enterprise, with the goal of making transactions to political campaigns in consideration for performance or nonperformance of acts by politicians. (*Id.* ¶ 95.)

Plaintiff alleges that Romankow leveraged his position and influence with the NJAJ to cause Netflix to buy the Fort Monmouth property for well-below market value. (*Id.* ¶ 99.) In exchange, Romankow and the NJAJ exercised control over and contributed to the *THWH*. (*Id.* ¶ 99.) Plaintiff claims that Romankow made defamatory statements in *THWH*, falsely implying that Plaintiff had criminal culpability in a February 1, 2013 incident.[2]

Judge Kirsch presided over Plaintiff's criminal proceedings in State court. Now, Plaintiff asserts that Judge Kirsch discriminated against him on the basis of his post-traumatic stress disorder ("PTSD") over the course of these criminal proceedings. (*Id.* ¶¶ 232-36.) Plaintiff claims that Judge Kirsch misrepresented Plaintiff's courtroom behavior to the prison psychologist. (*Id.* ¶ 233.) Allegedly, the prison then limited Plaintiff's access to the law library and other services, placed him on suicide watch, and involuntarily medicated him. (*Id.* ¶ 233.) Plaintiff appears to also believe that Judge Kirsch interfered with mail at the prison. (*Id.* ¶ 194.)

As to former Assemblywoman Stender, Plaintiff's only allegation is that she was engaged in activities affecting federal interstate and/or foreign commerce. (*Id.* ¶ 38.) Plaintiff does not make any other allegations concerning Assemblywoman Stender. In the original Complaint, Plaintiff named as Defendants the Office of the New Jersey Governor, the New Jersey

---

[2] The February 1, 2013 incident is described in the Memorandum that was previously filed by this Court. (Memorandum, ECF No. 309.)

Legislature, and Judge Karen M. Cassidy. (Complaint, ECF No. 1.) It appears in the first Amended Complaint that the Office of the Governor, the New Jersey Legislature, and Judge Cassidy are no longer named Defendants.

**II.      Legal Theories Advanced by Plaintiff in the First Amended Complaint against State Defendants:**

Plaintiff asserts numerous claims against the State Defendants. In Counts One, Two, Eleven, Thirteen and Sixteen of the first Amended Complaint, Plaintiff presents racketeering claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 to 1968 and the state of New Jersey Racketeer Influence and Corrupt Organization Act, NJSA 2C:4-1. (Am. Compl. ¶¶ 92-231 (Counts One – Two); ¶¶ 251-257 (Counts Eleven), ¶¶ 268-277 (Counts Thirteen), ¶¶ 293-299 (Count Sixteen).) Count Three presents a claim against Judge Robert Andrew Kirsch under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 – 12213. (Am. Compl. ¶¶ 232-234.) Count Four presents a *Bivens* claim against co-Defendants.[3] (Am. Compl. ¶¶ 235.) Counts Five and Six present claims under the federal Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983"). (Am. Compl. ¶¶ 236-237.) Count Seven presents an intentional infliction of emotional distress claim against Judge Robert Andrew Kirsch. (Am. Compl. ¶¶ 238-240.) Count Eight presents a Defamation claim against Judge Robert Andrew Kirsh. (Am Compl. ¶¶ 241-242.) Count Nine presents a defamation of character claim against Defendants including former Prosecutor Romonkow. (Am. Compl. ¶ 243.) Counts Ten, Twelve, Fourteen and Fifteen present claims under the First Amendment of the United

---

[3] A *Bivens* claim is a claim brought against a federal government official alleging violation of a federal constitutional right seeking money damages. The claim is named for *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), the case in which the United States Supreme Court first recognized the cause of action.

States Constitution along with claims for violation of Plaintiff's civil rights. (Am. Compl. ¶¶ 244-250 (Count Ten), ¶¶ 258-267 (Count 12), ¶¶ 278-284 (Count 14), ¶¶ 285-292 (Count 15).

## III.  DISCUSSION:

### A.  Plaintiff Fails to Assert a Viable RICO Claim Against the State Defendants:

In Counts One, Two, Eleven and Sixteen of the Amended Complaint, Plaintiff asserts claims against the State Defendants under the federal Racketeer Influence and Corruption Organization Act, 18 U.S.C. § 1962, and the state of New Jersey Racketeer Influence and Corrupt Organization Act, N.J.S.A. 2C:41-1 to 6.2 (collectively referred to as "RICO").

This Court previously addressed the merits of RICO claims asserted by Plaintiff in the Amended Complaint when it dismissed RICO claims asserted against other co-Defendants named in this matter. (Orders & Memorandum.) The same logic and reasoning previously applied by this Court when it dismissed RICO claims is applicable to the RICO claims asserted against the State Defendants. Plaintiff is simply unable to establish that he suffered an actual injury to business or property that was proximately caused by the State Defendants' alleged RICO violations. Therefore, Plaintiff cannot establish that he has standing to asserted RICO claims under either Article III of the United States Constitution and/or the applicable federal and state RICO statutes. *Miller v. Pocono Ranch Lands Prop. Owners Assn.*, 557 Fed. Appx. 141, 145 (3d Cir. 2014); *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (To establish standing for a civil RICO claim, a plaintiff must show he suffered an injury to business or property and that the injury was proximately cause by defendant's racketeering activities.); *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 300 (3d Cir. 2020) (RICO standing is "distinct from Article III standing").

On January 21, 2025, Plaintiff filed a letter on the docket in this litigation. (Letter, ECF No. 330.) In this letter, Plaintiff cites to a docketing irregularity in which his brief in opposition to the State Defendants' motion to dismiss was not uploaded to the docket until January 17, 2025. (*Id.* page 1.) Plaintiff avers that he forwarded his brief in opposition to the Clerk of Court on September 25, 2024. (*Id.*) Plaintiff cites to this docketing irregularity and argues that this Court failed to consider the evidence and exhibits attached to his brief in opposition, on December 23, 2024, when it granted the motions to dismiss filed by co-Defendants. (Orders, ECF No. 310-323; Memorandum, ECF No. 309.)

This Court is not persuaded by the arguments or allegations of judicial error made by Plaintiff in his letter. (Letter, ECF No. 330.) There are multiple reasons that the arguments and allegations made by Plaintiff in his letter are without merit. First and foremost is the fact that, as of October 1, 2024, this Court was in possession of a courtesy copy of Plaintiff's brief in opposition to the State Defendants' motion to dismiss which includes exhibits and evidence attached thereto.[4] Therefore, prior to ruling on co-Defendants' motion to dismiss, this Court had in fact reviewed the brief in opposition to the motion to dismiss filed by the State Defendants along with the exhibits and evidence attached thereto. Plaintiff's brief in opposition was also uploaded to the docket on January 17, 2025, prior to this Court's decision to grant the motion to dismiss filed by the State Defendants. However, there is nothing in the exhibits, evidence or argument raised in Plaintiff's brief in opposition that would change this Court's analysis of the on RICO claims asserted by Plaintiff in the first Amended Complaint.

---

[4] In the courtesy copy that Plaintiff forwarded to Chambers, it would appear that Plaintiff failed to include an exhibit entitled: Resolution Regarding Purchase and Sale & Redevelopment with Netflix, Inc., for the Mega Parcel in Eatontown and Oceanport. (Pls. Br. in Opp. to State Defendants, Exhibit F, ECF No. 328 page 34-39.) This exhibit appears on the docket in his Brief in Opposition to State Defendants' motion to dismiss but is also included as an exhibit attached to Plaintiff's Brief in Opposition to the FMERA Defendants' motion to dismiss. (ECF No. 167-5.)

6

The evidence and exhibits do nothing to support Plaintiff's purported claim of standing to pursue RICO claims against Defendants in this matter even assuming arguendo that Defendants had been involved in some purported RICO enterprise. Therefore, as set forth in the Memorandum previously entered by this Court, Plaintiff lacks Article III Constitutional standing to pursue RICO claims. Plaintiff also lacks standing as defined by the applicable RICO statutes under which he seeks to proceed.

Plaintiff's RICO based claims will be dismissed under Fed. R.C.P. 12(b)(1) and/or Fed. R.C.P. 12(b)(6). Plaintiff will not be permitted to file an amended complaint to renew claims against the State Defendants because amendment would be futile. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. See, e.g., *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879, 69 V.I. 1034 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); see also *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

**B.     The Doctrine Espoused in *Heck v. Humprhey*, 512 U.S. 477, Prevents Plaintiff from Pursuing Any Potential Claim under 42 U.S.C. § 1983:**

Any potential claim that Plaintiff seeks to assert against the State Defendants under 42 U.S.C. § 1983 will be dismissed from this action based on the doctrine espoused in *Heck v.*

*Humprhey*, 512 U.S. 477, and the related line of cases. In Counts Five through Seven of the first Amended Complaint, Plaintiff asserts due process and conspiracy related claims against moving Defendants. Plaintiff alleges that Judge Robert A. Kirsh, former Prosecutor Theordore Romankow, and the bid-rigging syndicate fabricated evidence against him, impacting his prison treatment and impeding his ability to appeal his conviction. (Am. Compl. ¶¶ 236-240 (Counts Five through Seven).) Plaintiff cannot pursue claims under 42 U.S.C. § 1983 because if Plaintiff were to prevail on claims he seeks to assert, this favorable disposition would constitute a collateral attack on the validity of his criminal conviction in violation of the rule espoused in *Heck v. Humprhey*.

In *Heck v. Humphrey*, the Supreme Court held that "where success in a [Section] 1983 action would implicitly call into question the validity of conviction or duration of sentence; the plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction or sentence." *Williams v. Consovoy*, 453 F.3d 173, 176 (3d Cir. 2006) (citing *Heck v. Humphrey*, 512 U.S. 477 (1994)). The restriction on litigation imposed by *Heck v. Humphrey* remains in force even if habeas relief is no longer available to the plaintiff. *Williams*, 453 F.3d at 177.

In a line of decisions, the Supreme Court has repeatedly reaffirmed the holding of *Heck v. Humphrey* by ruling that a prisoner in state custody cannot use a Section 1983 action to challenge "the fact or duration of his confinement." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *see also Wolff v. McDonnell*, 418 U.S. 539, 554 (1974); *Heck*, 512 U.S. at 481; *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Instead, a prisoner must seek federal habeas corpus relief (or appropriate state relief). In *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005), the Supreme Court reiterated that under *Heck*, "a prisoner cannot use [Section] 1983 to obtain damages where

success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence." *See Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) ("This Court has held that a prisoner in state custody cannot use a [Section] 1983 action to challenge 'the fact or duration of his confinement.'") (quoting *Preiser*, 411 U.S. at 489); *see also Leamer v. Fauver*, 288 F.3d 532, 540 (3d Cir. 2002) (noting that the Supreme Court has clarified "that a plaintiff cannot circumvent the overlap between habeas and Section 1983 by raising an issue as an attack on procedure rather than substance, when resolution of the issue in his favor would necessarily imply the invalidity of the sentence – the fact or duration of detention" (citing *Edwards v. Balisok*, 520 U.S. 641, 646-47)). As explained in *Wilkinson*, "a state prisoner's [Section] 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief) . . . if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82. Thus, Plaintiff cannot overcome the *Heck* bar by seeking damages rather than the invalidation of conviction or release from confinement.

Plaintiff will not be permitted to file an amended complaint to renew Section 1983 claims against the State Defendants because amendment would be futile. Section 1983 claims will be dismissed with prejudice and without leave to amend.

C.   **The State Defendants are not "Persons" Subject to Section 1983:**

It would appear that Plaintiff is attempting to assert claims against the State Defendants in their official capacities under 42 U.S.C. § 1983. Plaintiff specifically asserts what could be characterized as official capacity claims against Defendants Judge Robert Kirsch and former prosecutor Theodore Romankow; however, Plaintiff also names Governor Philip D. Murphy, Karen Cassidy, Nicholas Scutari and Linda D. Stender as Defendants in this action along with

the Office of the New Jersey Governor and the New Jersey Legislature.  The Court will dismiss any claims that Plaintiff seeks to assert against these State Defendants in their official capacity.

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)).  Thus, official capacity claims against the individual Defendants here – all of whom are or were employed by the State of New Jersey – are really claims against the state of New Jersey, which is shielded from Section 1983 suits by Eleventh Amendment immunity.  *See supra* § III.A.1*; see also Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity.").  Eleventh Amendment immunity also bars suits against a state and its agencies – such as the Office of the New Jersey Governor and the New Jersey Legislature – in federal court when the state has not waived that immunity.  *Id.*  In this instance, New Jersey has not waived that immunity.

Since the Office of the New Jersey Governor and the New Jersey Legislature is an agency of the state of New Jersey, it is entitled to Eleventh Amendment immunity and is not a "person" for purposes of Section 1983.  *Waterfront Comm'n of N.Y. Harbor v. Governor of N.J.,* 961 F.3d 234, 238 (3d Cir. June 5, 2020) ("As a rule, federal courts may not entertain a private person's suit against a State unless the State has waived its immunity or Congress has permissibly abrogated it."); *Beightler v. New Jersey*, 2008 U.S. Dist. LEXIS 102154, *13 (N.J.D. December 16, 2008) ("The District of New Jersey has consistently held that New Jersey county prosecutors' offices are entitled to Eleventh Amendment immunity from suits arising out of the exercise of prosecutorial powers" and collective cases).

In regard to Judge Kirsch, Plaintiff appears to allege a Section 1983 claim based on violations of the First, Fifth and Fifteenth Amendments of the U.S. Constitution. (Am. Compl. ¶ 236. (Count Five).) In regard to former Prosecutor Romankow, Plaintiff seems to allege a Section 1983 claim premised on the Fifth and Sixth Amendments of the U.S. Constitution. (Id. (Count Six).) It is beyond dispute that Judge Kirsch and former Prosecutor Romankow were appointed to office and are arms of the state of New Jersey. It is also beyond dispute that Governor Murphy and Senator Scutari were elected to office and function as arm of the state of New Jersey.

Accordingly, this Court will dismiss with prejudice Plaintiff's official capacity claims against Governor Philip D. Murphy, Karen Cassidy, Robert Kirsch, Theodore Romankow, Nicholas Scutari, Linda D. Stender, Judge Karen M. Cassidy, the Office of the New Jersey Governor, and the New Jersey Legislature. Plaintiff will not be provided with leave of court to file an amended complaint to renew these claims.

**D.     The State Defendants have Eleventh Amendment Immunity against Plaintiff's Tort Claims Based on State Law:**

Eleventh Amendment Immunity prevents Plaintiff from pursuing tort claims in federal district court under either common law tort theories or New Jersey statutory law. It would appear that Plaintiff is attempting to proceed against the State Defendants on theories of intentional infliction of emotional distress and defamation of character. (Am. Compl. ¶¶ 238-240 (Count Seven), ¶¶ 241-243 (Count Eight and Nine).)

The Eleventh Amendment, in essence, restricts the ability of individuals to sue a state in federal court. U.S. Const. amend. XI. This immunity extends to suits against state officers acting in their official capacity. *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). The United States Supreme Court in *Ex Parte Young*, 209 U.S. 123

(1908), carved out a limited exception to this rule, holding that individual state officers could be sued for prospective injunctive and declaratory relief to end continuing or ongoing violations of federal law. The exception to Eleventh Amendment immunity set forth by the Court in *Ex Parte Young* does not apply to the tort theories advanced by Plaintiff under New Jersey statutory and/or common law because they lack basis in federal law. Accordingly, Plaintiff's causes of action for intentional torts brought against the State Defendants in their official capacity are barred by the Eleventh Amendment and will be dismissed from this action. Plaintiff will not be granted leave to amend to assert renewed official capacity claims against the State Defendants.

E.      **Judge Robert Andrew Kirsch is Entitled to Judicial Immunity from Suit:**

Judge Kirsch is entitled to judicial immunity for any actions allegedly taken in his judicial capacity. Judge Kirsch's alleged actions were undertaken in his judicial capacity overseeing Plaintiff's criminal proceedings. Even if Judge Kirsch acted maliciously, as seemingly alleged by Plaintiff, Judge Kirsch is still entitled to immunity. Under the doctrine of judicial immunity, a judicial officer has absolute immunity from suit for actions taken in his or her judicial capacity. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (citing *Mireles*, 502 U.S. at 12). Judicial immunity stems from "the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000). When a judge has acted in his or her judicial capacity, as opposed to an executive or administrative capacity, he or she is entitled to absolute judicial immunity from damage claims even when the action was erroneous, done maliciously, or exceeded authority. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

Plaintiff alleges several claims against Judge Kirsch stemming from Plaintiff's criminal proceedings in New Jersey state court. Plaintiff alleges that Judge Kirsch discriminated against him by failing to accommodate his PTSD. (Am. Compl. ¶¶ 232-234 (Count Three).) Specifically, Plaintiff claims that Judge Kirsch called the prison and misrepresented Plaintiff's courtroom behavior to the psychologist. (*Id.* ¶ 233.) Consequently, Plaintiff avers that he was placed on suicide watch, involuntarily medicated, deprived of law library services, and clothing. (*Id.*) Based on actions allegedly taken by Judge Kirsch during Plaintiff's criminal trial, Plaintiff alleges that Judge Kirsch discriminated against him based on his PTSD in violation of the Americans with Disabilities Act. (*Id.* ¶¶ 232-234 (Count Three).) Plaintiff also asserts claims against Judge Kirsh under Section 1983. (*Id.* ¶ 236 (Count Five)). Plaintiff then asserts tort theories for intentional infliction of emotional distress (*id.* ¶¶ 238-24 (Count Seven)), and claims for defamation of character against Judge Kirsch. (*Id.* ¶¶ 241-242. (Counts Eight).)

Judge Kirsch is entitled to judicial immunity from suit for all of the legal theories asserted by Plaintiff in the first Amended Complaint. The legal theories asserted against Judge Kirsch are based on the allegations that Judge Kirsch called the prison to speak with the psychologist. Assuming arguendo that Judge Kirsch did in fact call the prison, as alleged by Plaintiff in the first Amended Complaint, then Judge Kirsch's purported act of calling the prison would have been taken in his judicial capacity in relationship to his official duties of overseeing Plaintiff's criminal trial. Therefore, claims asserted against Judge Kirsch are dismissed from this litigation with prejudice. Plaintiff will not be permitted to file an Amended Complaint because amendment will be futile.

E. **The Applicable Statute of Limitations Prevents Plaintiff from Pursuing Defamation of Character Theories against Judge Kirsch**:

Plaintiff seeks to recover from Judge Kirsch based on legal theories for defamation of character. (Am. Compl. ¶¶ 241-242 (Counts Eight).) As previously discussed hereinabove, both Eleventh Amendment immunity and/or the doctrine of judicial immunity prevent Plaintiff from pursuing litigation against Judge Kirsch based on theories of defamation of character. However, the statute of limitation also prevents Plaintiff from pursuing defamation of character claims against Judge Kirsch.

Under N.J. Stat. Ann. § 2A:14-3, actions for libel or slander shall be commenced within one year after publication of the alleged libel or slander. The statute of limitations is strictly construed. *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 3 F. Supp. 2d 518, 538 (D.N.J. 1998). The discovery rule, which defers accrual of actions until a plaintiff knows or should have known about the injury, is inapplicable to defamation actions. *R.K. v. Y.A.L.E. Sch., Inc.*, 621 F. Supp. 2d 188, 202 (D.N.J. 2008); s*ee also Rumbauskas v. Cantor*, 138 N.J. 173, 183 (1994) (noting that false light claims "are subject to the limitations period for defamation claims, which is one year in New Jersey.").

In this instance, Plaintiff alleges that Judge Kirsch called the prison and misrepresented Plaintiff's courtroom behavior to the psychologist. (*Id.* ¶ 233.) Judge Kirsch's actions allegedly caused Plaintiff to be placed on suicide watch and deprived of law library services. (*Id.* ¶ 233.) Judge Kirsch's alleged defamation of Plaintiff occurred during Plaintiff's criminal trial on or about May 30, 2019. This would have been about four years before Plaintiff filed his original Complaint on November 30, 2023, and five years before he filed the first Amended Complaint on June 3, 2024. (Complaint; Amended Complaint.) Even if Plaintiff discovered the alleged defamation in the one-year prior to filing his lawsuit, the claims would be barred because the

discovery rule is inapplicable to defamation actions. Therefore, the Court will dismiss with prejudice defamation of character claims brought against Judge Kirsch. Plaintiff will not be permitted to file an amended complaint to renew these claims because amendment would be futile.

F. **Plaintiff Fails to Aver Sufficient Facts to Establish Defamation of Character Claims against Former Union County Prosecutor Theodore Romankow:**

Plaintiff alleges a defamation claim against former Prosecutor Romankow for purportedly false statements that appear in the documentary *The Hatchet Wielding Hitchhiker* concerning Plaintiff's actions and criminal culpability in the February 1, 2013 incident. (Am. Compl. ¶¶ 237-243 (Count Nine).) However, Plaintiff fails to plead the necessary facts to establish a defamation claim against Defendant Romankow. To establish a defamation claim, a plaintiff must show that the defendant (1) made a false, defamatory statement about the plaintiff, (2) communicated the statement to a third party and (3) had a sufficient degree of fault. *Mangan v. Corporate Synergies Group, Inc.*, 834 F. Supp. 2d 199, 204 (D.N.J. 2011) (citing *Singer v. Beach Trading Co.*, 379 N.J. Super. 63 (App. Div. 2005).

Whether a statement is defamatory depends on content, verifiability and context. *Id.* (citing *Lynch v. N.J. Educ. Ass'n*, 161 N.J. 152 (1999)). Statements of pure opinion do not satisfy this requirement because such statements only "reflect a state of mind," and generally "cannot be proved true or false." *Id*. Statements of opinion do not receive an exemption if the statements "imply false underlying objective facts." *Id*. (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18 (1990). Generally, a defamatory statement subjects an individual to contempt or ridicule, harming a person's reputation by lowering the community's estimation of him or by deterring others from associating or dealing with him. *G.D. v. Kenny*, 205 N.J. 275, 293 (2011).

The defamation claim asserted by Plaintiff relies on statements that former Prosecutor Romankow made about Plaintiff's criminal culpability in the February 13, 2013 incident. (See Memorandum page 4-5, 7, ECF No. 309.) This Court finds that the statements made by Defendant Romankow were an expression of his opinion offered in his official role as Union County Prosecutor which was based on his investigation into Plaintiff's criminal conduct. The Court further finds that Defendant Romankow's interpretation of the facts surrounding the investigation into Plaintiff amounts to nothing more than an expression of his opinion which is insufficient to establish a defamation claim. The Court would like to note that Plaintiff previously attempted to bring a similar defamation claim against former Prosecutor Romankow as discussed in *McGillvary v. Galfy*, 2022 U.S. Dist. Lexis 134998, *16 (N.J.D. July 28, 2022). In *McGlillvary v. Galfy*, 2022 U.S. Dist. LEXIS 134998, *16 (N.J.D. July 28, 2022), Judge Madeline Cox Arleo granted a motion to dismiss Plaintiff's defamation claim. Plaintiff in the case *sub judice* failed to allege sufficient facts to establish a *prima facia* case; therefore, the Court will once again dismiss the defamation claims asserted against Defendant Romankow. Plaintiff will not be permitted to file an amended complaint to reassert defamation claims against Defendant Romankow because amendment would be futile.

### G. Plaintiff Fails to Assert a Viable First Amendment or Civil Rights Claim against the State Defendants:

Plaintiff fails to aver viable claims for violation of his First Amendment constitutional rights or any viable claim related to a violation of his civil rights. In Count Ten, Plaintiff presents a claim for deprivation of his First Amendment right to petition, implicating the State Defendants, which Plaintiff believes includes Governor Murphy, Senator Scutari, and former Prosecutor Romankow. (Am. Compl. ¶¶ 244-250.) Plaintiff alleges that Senator Scutari, former Prosecutor Romankow and their agents conspired with unknown Defendants to interfere with the

filing of Plaintiff's petition in opposition to Fort Monmouth's reuse plan amendment. (*Id.* ¶¶ 244-246.) In Count Twelve, Plaintiff claims that Senator Scutari and former Prosecutor Romankow conspired with unknown Defendants to interfere with Plaintiff's filings in state court. (*Id.* ¶¶ 258-267.) Plaintiff also advances a first Amendment claim in Count Fifteen of the first Amended Complaint.

This Court previously granted a motion to dismiss filed by co-Defendants, Fort Monmouth Economic Revitalization Authority ("FMERA"), in which this Court addressed similar allegations that Plaintiff's First Amendment rights and/or civil rights were violated. (Order, ECF No. 327.) Therefore, it would be redundant to reiterate herein again the legal justification for dismissing claims asserted by Plaintiff so the Court will refer the reader to the Order that it previously entered, and it incorporates by reference the case law and those arguments as if set forth herein again. (*Id.*) It suffices to say that the First Amendment of the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech, . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. The right to petition protects the legal right to litigate in government-established forums. *Borough of Duryea, Pa. v. Guarniere,* 564 U.S. 379, 386 (2011).

Claims asserted by Plaintiff for violation of his First Amendment rights and/or related civil rights rely entirely on his unsupported conspiracy theories. Plaintiff fails to plausibly plead allegations in support of claims. Specifically, Plaintiff fails to plead facts to establish how Senator Scutari, former Prosecutor Romankow, or any of the other State Defendants interfered with his petitions. As such, Plaintiff's First Amendment claims are dismissed with prejudice and without leave to file an amended complaint.

## IV. CONCLUSION:

For these reasons, the motion to dismiss filed by the State Defendants is granted and all claims asserted against the State Defendants in the first Amended Complaint are dismissed from this action with prejudice. Plaintiff will not be permitted to file an amended complaint to asserted renewed claims. An appropriate order will be entered on the docket.

**BY THE COURT:**

   /s/ John Milton Younge
Judge John Milton Younge