IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CALEB L. MCGILLVARY, | : | |
|     Plaintiff, | : | No. 23-cv-22605-JMY |
| | : | |
| vs. | : | |
| | : | |
| NICHOLAS SCUTARI, et al., | : | |
|     Defendants. | : | |

**MEMORANDUM**

**Younge, J.**                                                                                                              March 11, 2025

Currently before the Court is a motion to dismiss Plaintiff's first Amended Complaint filed by Defendants, Christine P. O'Hearn, Renee Marie Bumb, Madeline Cox Arleo, and Cathy L. Waldor (collectively referred to as the "Federal Judicial Defendants"). (Motion to Dismiss, ECF No. 270.) Also before the Court is a motion to dismiss filed by Defendant Robert Menedez. (Motion to Dismiss "Menedez MTD," ECF No. 305.) The Defendants will collectively be referred to as the Federal Defendants.

The Court finds the Federal Defendants' motions to dismiss appropriate for resolution without oral argument. See Fed. R. Civ. P. 78, L.R. 7.1(f). For the reasons set forth below, the Federal Defendants' motions to dismiss will be granted, and all claims in the first Amended Complaint asserted against the Federal Defendants will be dismissed from this litigation. Plaintiff will not be permitted to file an amended complaint to assert renewed claims against these Defendants.

**I.      FACTUAL AND PROCEDURAL HISTORY:**

This Court previously entered a series of Orders and a Memorandum in connection with its decision to grant motions to dismiss that were filed by co-Defendants in this matter. (Memorandum, ECF No. 309; Orders, ECF No. 310-323.) The Memorandum that was

previously entered by the Court sets forth the factual and procedural history related to this litigation along with the applicable legal standard. Therefore, it would be redundant to reiterate herein again the factual and procedural history or applicable legal standard that was previously explained, and this Court will refer the reader to its Memorandum for a discussion on those topics.

**Legal Theories and Supporting Factual Allegations Asserted by Plaintiff against the Federal Judicial Defendants:**

Plaintiff alleges that Federal Judicial Defendants conspired with former-United States Senator Robert Menendez, in furtherance of an elaborate and wide-swiping money laundering and bribery scheme. (*Id.* 92-182 (Counts One), ¶¶ 183-231 (Count Two).) Plaintiff alleges that Defendant Menendez used the authority he formerly possessed as a U.S. Senator in furtherance of a "Bid Rigging Syndicate Enterprise" by engaging in unspecified activities that purportedly aided the enterprise and in securing the appointments of judges to the Federal Judiciary who would then abuse their use newly obtained judicial authority in furtherance of that enterprise. (*Id.*)

Plaintiff asserts two claims against Defendant Menendez for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (*Id.*) Plaintiff alleges that Defendant Menendez conspired with Defendants Theodore Romankow (the prosecutor in Plaintiff's state murder trial) and Judges O'Hearn and Arleo in furtherance of an elaborate and wide-swiping money laundering and bribery scheme and abused the authority he formerly possessed as a U.S. Senator in doing so. Based on nothing more than his own information and belief, Plaintiff contends that Mr. Menendez was recruited by Defendant Romankow to join the "Bid Rigging Syndicate Conspiracy." (*Id.* ¶¶ 91.6, 98.) Also without support other than his own speculation, Plaintiff alleges that in exchange for Defendant Menendez's "ratify[ing the Bid Rigging

2

Syndicate's] acts up to that point" and engaging in unspecified "activities in the U.S. Senate in furtherance of [its] goals," Romankow contributed approximately $6,200.00 towards Defendant Menendez's political campaigns over four-year period (2018 through 2021). (*Id.* ¶ 98.)

With regard to Judge O'Hearn, Plaintiff asserts claims under RICO (*id.* ¶¶ 183-231 (Counts Two), ¶¶ 292-299 (Sixteen), and Bivens. (*Id.* ¶ 235 (Counts Four), ¶¶ 278-284 (Fourteen), ¶¶ 285-292 (Fifteen).) In support of such claims, Plaintiff contends – based on nothing more than his own information and belief – that Defendant Menendez recruited Judge O'Hearn to join the "Bid Rigging Syndicate Conspiracy" over 10 years ago and promised Judge O'Hearn a nomination to the Federal Judiciary if she "showed herself to be favorable to Bid Rigging Syndicate Enterprise interests over the course of a decade" and contributed $5,000.00 to his political campaigns. (*Id.* ¶ 183.) Plaintiff further contends that Judge O'Hearn later used her judicial authority in furtherance of the "Bid Rigging Syndicate Enterprise" by interfering with legal proceedings Plaintiff commenced in the United States District Court for the District of New Jersey, including through actions Judge O'Hearn took when presiding over Plaintiff's Habeas Petition.[1] (*Id.* ¶¶ 191-92, 278-99.)

With regard to Chief Judge Bumb, Plaintiff asserts claims under RICO (*id.* ¶¶ 183-231 (Counts Two) ¶¶ 292-299 (Sixteen) and Bivens. (*Id.* ¶ 235 (Counts Four); ¶¶ 285-292 (Fifteen).) Based on his information and belief, Plaintiff asserts that Chief Judge Bumb used her judicial authority in furtherance of the "Bid Rigging Syndicate Enterprise" by interfering with legal proceedings Plaintiff commenced in the District of New Jersey. (*Id.* ¶¶ 191-92, 285-99.)

---

[1] Plaintiff alleges that Federal Judicial Defendants abused their authority by interfering with a Habeas Corpus Petition he filed in the United States District of New Jersey. (*Id.* ¶ 187.) Plaintiff similarly asserts that Federal Judicial Defendants interfered with the above-captioned matter which was ultimately reassigned to the undersigned. (*Motion for Recusal and to Transfer*, ECF No. 3; *Order*, ECF No. 5.)

With regard to Judge Arleo, Plaintiff asserts claims under RICO, (*id.* ¶¶ 183-231 (Count Two), and Bivens. (*Id.* ¶ 235 (Count Four).) In support of such claims, Plaintiff contends – based on nothing more than his own information and belief – that Defendant Menendez recruited Judge Arleo to join the "Bid Rigging Syndicate Conspiracy" and, after he "us[ed] his office to obtain for [Judge Arleo] a nomination and appointment to the federal bench[,]" Judge Arleo "act[ed] and rule[d] as a district judge under [] direction from Bid Rigging Syndicate Conspiracy members[.]" (*Id.* ¶ 185.) Plaintiff further alleges – solely on information and belief – that Judge Arleo later recruited Judge Waldor to join the "Bid Rigging Syndicate Conspiracy" by promising Judge Waldor an appointment as a magistrate judge. (*Id.* ¶ 186.) Plaintiff also contends that Judge Arleo abused her judicial authority to interfere with legal proceedings Plaintiff filed in the District of New Jersey, including by "issuing a clandestine unwritten standing order and policy or custom . . . that all of Plaintiff's [legal] filings were to be intercepted at the [United States Postal Service] processing facility and obstructed" (*Id.* ¶ 189), and repeatedly interfering with Plaintiff's use of the mail. (*Id.* ¶¶ 189-91, 196-99, 201, 204-05, 207-17.)

With regard to Judge Waldor, Plaintiff appears to assert claims under RICO, (*id.* ¶¶ 183-231 (Count Two), and Bivens. (*Id.* ¶ 235 (Count Four).) In support of such claims, Plaintiff contends – on information and belief – that Judge Waldor joined the "Bid Rigging Syndicate Conspiracy" in exchange for an appointment as a magistrate judge, and thereafter used her judicial authority in furtherance of the "Bid Rigging Syndicate Enterprise" by interfering with legal proceedings Plaintiff commenced in the District of New Jersey. (*Id.* ¶¶ 186, 217-18.)

**II.    DISCUSSION:**

Plaintiff's fraud-based RICO claims asserted against the Federal Defendants will be dismissed for all the reasons previously discussed in the Memorandum that was entered by the

Court when it granted motions to dismiss filed by co-Defendants.  As will be discussed in more detail below, the Federal Judicial Defendants are also entitled to absolute judicial immunity for all judicial acts or omissions allegedly committed in relationship to litigation over which they had jurisdiction.  Finally, the Court will not imply a *Bivens* remedy for claims asserted against Federal Judicial Defendants when existing law does not recognize a *Bivens* claim based on the facts asserted.

A.     **Plaintiff Fails to Assert a Viable RICO Claim Against the Federal Defendants:**

In Counts Two and Sixteen of the first Amended Complaint, Plaintiff asserts claims against the Federal Judicial Defendants under the federal Racketeer Influence and Corruption Organization Act, 18 U.S.C. § 1962, *et seq.*, (hereinafter "RICO").  In Counts Two and Sixteen of the first Amended Complaint, Plaintiff asserts RICO claims against Defendant Menendez.

The Court previously addressed the merits of RICO claims asserted by Plaintiff in the Amended Complaint when it dismissed RICO claims asserted against other co-Defendants named in this matter.  (Orders, ECF No. 310-323; Memorandum, ECF No. 309.)  The same logic and reasoning previously applied by the Court when it dismissed RICO claims is applicable to the RICO claims asserted against the Federal Defendants.  Plaintiff is simply unable to establish that he suffered an actual injury to business or property that was proximately caused by the Federal Defendants' alleged RICO violations.  Therefore, Plaintiff cannot establish that he has standing to asserted RICO claims under either Article III of the United States Constitution and/or the applicable federal and state RICO statutes.  *Miller v. Pocono Ranch Lands Prop. Owners Assn.*, 557 Fed. Appx. 141, 145 (3d Cir. 2014); *Maio v. Aetna, Inc.*, 221 F.3d 472, 483 (3d Cir. 2000) (To establish standing for a civil RICO claim, a plaintiff must show he suffered an injury to business or property and that the injury was proximately cause by defendant's racketeering

5

activities.); *St. Luke's Health Network, Inc. v. Lancaster Gen. Hosp.*, 967 F.3d 295, 300 (3d Cir. 2020) (RICO standing is "distinct from Article III standing").

Therefore, as set forth in the Memorandum previously entered by this Court, Plaintiff lacks Article III Constitutional standing to pursue RICO claims. Plaintiff also lacks standing as defined by the applicable RICO statutes under which he seeks to proceed.

Plaintiff's RICO based claims will be dismissed under Fed. R.C.P. 12(b)(1) and/or Fed. R.C.P. 12(b)(6). Plaintiff will not be permitted to file an amended complaint to renew claims against the Judicial Defendants because amendment would be futile. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. See, e.g., *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879, 69 V.I. 1034 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, i.e., if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); see also *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002).

**B.      Federal Judicial Defendants are Entitled to Absolute Judicial Immunity:**

The Federal Judicial Defendants are entitled to absolute judicial immunity for any alleged action taken in their judicial capacity. A plain reading of the first Amended Complaint illustrates that most, if not all, of the misconduct asserted against the Federal Judicial Defendants arises

from acts or omission committed in their capacity as Article III, United States District Judges. The claims Plaintiff asserts against the Federal Judicial Defendants arise primarily from their handling of above-captioned case prior to it being assigned to the undersigned and Plaintiff's habeas corpus petition. Therefore, even if the Federal Judicial Defendants acted maliciously, as seemingly alleged by Plaintiff, the Federal Judicial Defendants are still entitled to immunity.

Under the doctrine of judicial immunity, "[a] judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006) (citing *Mireles v. Waco*, 502 U.S. 9, 12 (1991)). "The doctrine of absolute judicial immunity is 'founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions' without the threat of suit." *Andrews v. Hens-Greco*, 641 F. App'x 176, 179 (3d Cir. 2016) (quoting *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000)). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Mireles*, 502 U.S. at 9 (quoting *Bradley v. Fisher*, 13 Wall. 335, 347, 80 U.S. 335, 20 L.Ed. 646 (1872)).

"A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Azubuko*, 443 at 303 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)). Judicial immunity "is overcome in only two sets of circumstances. First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though

judicial in nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12. "The immunity is only lost where the judge's actions that gave rise to suit were: (1) nonjudicial in nature; or (2) were 'taken in the complete absence of all jurisdiction.'" *Andrews*, 641 F. App'x at 179 (quoting *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000)). "[S]o long as (1) the judge's actions are taken in his judicial capacity . . . and (2) the judge has some semblance of jurisdiction over the acts, he will have immunity for them." *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 660 (E.D. Pa. 2014).

Factual allegations in Plaintiff's first Amended Complaint establish that the lawsuit against the Federal Judicial Defendants arises primarily from judicial acts taken by the Federal Judicial Defendants in their role as presiding judges over federal court proceedings. For example, Plaintiff makes the following factual averments in relationship to the Federal Judicial Defendants:

- Judge O'Hearn issued improper orders in connection with his Habeas Petition, including "by issuing an order denying Plaintiff's pending motion for summary judgment" (Amended Complaint ¶ 192), and administratively terminating the Habeas Petition. (*Id.* ¶¶ 279-83).

- Chief Judge Bumb inappropriately assigned the Habeas Petition to Judge O'Hearn and issued a "ruling" that Plaintiff contends "usurp[s] the [Third] Circuit's judicial authority by holding" that the Federal Rules of Civil Procedure are "inappropriate for habeas proceedings" and denying his motion for summary judgment. (*Id.* ¶¶ 191-192.)

- Judge Arleo acted "through her office as a district judge to delay, obstruct, and impede Plaintiff's federal habeas proceedings." (*Id.* ¶ 187.) Plaintiff also accuses Judge Arleo of "perform[ing] [various] act[s] in her office as the senior district judge" (*id.* ¶¶ 189-90, 216), including by "refusing to perform her duty of issuing a show cause order" Plaintiff's believes was merited (*id.* ¶ 190), delaying rulings that Plaintiff believes should have issued earlier (*id.* ¶¶ 198, 217), "holding onto the IFP application" Plaintiff filed in connection with his Habeas Petition (*id.* ¶ 208), and "deliberately refusing to dispose of" cross claims in another action that Plaintiff believes to be meritless. (*Id.* ¶ 216).

- Judge Waldor "performed the act in her office as magistrate judge … of refusing to allow deposition testimony sought by Plaintiff in another action. (*Id.* ¶ 218.)

8

These acts are clearly judicial in nature and were not taken in the complete absence of all jurisdiction. *See, e.g.*, *Azubuko*, 443 F.3d at 303 (dismissing appeal under 28 U.S.C. § 1915(e)(2)(B) where "[a]ll of the allegations in [the *pro se* appellant's] complaint relate to actions taken by the presiding judge in his capacity as a judge" and appellant failed to show that his "actions were taken in clear absence of his jurisdiction"); *Malhan v. Platkin*, No. 22-cv-6353, 2023 WL 8253028, at *7 (D.N.J. Nov. 29, 2023) ("Because [plaintiff's] claims arise from the Judge Defendants' performance of their judicial duties enforcing a constitutional gag order and adjudicating child custody and support disputes, they are barred by absolute judicial immunity even if the Judge Defendants acted erroneously or out of malice." (footnote omitted)), *appeal filed sub nom. Malhan v. Beyer*, No. 23-3264 (3d Cir.). *See also, e.g.*, *Dodson v. United States Dist. Court, Dist. of N.J.*, No. 23-cv-22433, 2023 WL 8232895, at *3 (D.N.J. Nov. 28, 2023) (holding that the judicial defendant was entitled to absolute judicial immunity because the plaintiff "has not pled any facts to show that Judge Kirsch's actions in granting a motion to dismiss [p]laintiff's complaint were non-judicial or taken in the absence of jurisdiction"); *Baquero v. Mendoza*, No. 18-cv-15081, 2019 WL 3712201, at *4 (D.N.J. Aug. 6, 2019) (holding that the three judicial defendants were entitled to absolute judicial immunity where plaintiff "assert[ed] that the judges violated his rights by issuing orders that are erroneous or against his interests" and all actions were taken in their capacities as judges), *aff'd*, 828 F. App'x 137 (3d Cir. 2020); *Calabrese v. New Jersey*, No. 17-cv-4987, 2018 WL 2441763, at *4 (D.N.J. May 31, 2018) (declining to find that the plaintiff has shown that the judicial defendant's alleged acts were not judicial through conclusory averments that she acted "unconstitutionally").

### C. The Court Will Not Permit Plaintiff to Proceed against the Federal Judicial Defendants with Novel *Bivens* Claims:

In Counts Four, Fourteen and Fifteen of the first Amended Complaint, Plaintiff asserts claims against the Federal Judicial Defendants based on *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 1971). However, the factual averments set forth in the first Amended Complaint fail to establish valid *Bivens* claims under existing law. To the extent that the doctrine of judicial immunity does not act to bar Plaintiff's *Bivens* claims, the Court will dismiss any remaining *Bivens* claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiff will not be granted leave to file an amended complaint to assert renewed *Bivens* claims against the Federal Judicial Defendants because the claims advanced by Plaintiff are not recognized under existing law.

The Supreme Court has recognized a *Bivens* remedy in only three contexts: (1) under the fact pattern presented *Bivens* itself which involved a Fourth Amendment unlawful search and seizure claim arising from allegations that federal narcotics agents "manacled" a man in his home without a warrant; (2) a congressional staffer's Fifth Amendment claim of gender discrimination - in *Davis v. Passman*, 442 U.S. 228 (1979); and (3) an Eighth Amendment claim of deliberate indifference to a prisoner's serious medical condition, resulting in his death - in *Carlson v. Green*, 446 U.S. 14 (1980). *Egbert*, 596 U.S. at 490-91. "These three cases . . . represent the only instances in which the [Supreme] Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 582 U.S. at 131. In the over four decades since *Carlson*, the Supreme Court has "repeatedly refused to recognize *Bivens* actions in any new contexts." *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017) (noting that Carlson provided "the last set of novel circumstances in which the Court implied a *Bivens* action"); *see also Hernandez v. Mesa*, 589 U.S. 93, 101-02 (2020). Indeed, the Supreme Court recently

10

reiterated that "recognizing a cause of action under *Bivens* is a disfavored judicial activity." *Egbert*, 596 U.S. at 491.

The Supreme Court has instructed lower courts to determine whether "special factors counselling hesitation" exist before expanding a *Bivens* remedy to any context that is "different in a meaningful way" from the three previous cases decided by the Supreme Court. *Abbasi,* 582 U.S. at 136, 139; *see Egbert*, 596 U.S. at 492. "The necessary inference [] is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi,* 582 U.S. at 136. The Supreme Court has explained that *Abbasi*'s two-step *Bivens* test "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492, 496. A court cannot recognize a *Bivens* remedy where there is even the "*potential*" that "judicial intrusion into a given field might be harmful or inappropriate." *Id*. at 496. Notably, the Supreme Court reasoned that "uncertainty alone" regarding the "consequences" of extending a damages remedy under *Bivens* warrants hesitation and "forecloses relief." *Id.* at 493.

In the case *sub judice*, Plaintiff alleges that Federal Judicial Defendants violated his First, Fifth, and Fourteenth Amendment rights by improperly using their authority as members of the Federal Judiciary in purported furtherance of the "Bid Rigging Conspiracy Syndicate", or to interfere with Plaintiff's access to the courts. (Amended Complaint ¶ 235 (Count Four), ¶¶ 278-84 (Count Fourteen), ¶¶ 285-92 (Count Fifteen).) Specifically, Federal Judicial Defendants' actions allegedly involved, *inter alia*, the issuing of rulings in legal proceedings properly before them that Plaintiff disagrees with (*id*. ¶¶ 185, 187, 191-92, 278-79 281-82, 287), making campaign donations Plaintiff believes to be improper, (*id*. ¶ 183), and interfering with the

11

activities of the United States Postal Service in a manner that disrupted Plaintiff's access to the courts. (*Id.* ¶¶ 189, 196-199, 201, 204-205, 207-217.)

Plaintiff asserts that his rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution were violated. (*Id.* ¶ 235 (Count Four), ¶¶ 281, 283 (Count Fourteen), ¶ 290 (Count Fifteen). However, Plaintiff does not assert anything resembling the Fifth Amendment gender discrimination claim seeking back pay at issue in *Davis*. *See Davis*, 442 U.S. at 231. Additionally, the Fourteenth Amendment does not apply to the Federal Judicial Defendants. *See Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n.11 (3d Cir. 2005); *see also District of Columbia v. Carter*, 409 U.S. 418, 424 (1973) ("actions of the Federal Government and its officers are beyond the purview of the [Fourteenth] Amendment."). In regards to any claim that the Federal Judicial Defendants violated Plaintiff's First Amendment rights, the Supreme Court has expressly held that "there is no *Bivens* action for First Amendment retaliation." *Egbert*, 596 U.S. at 498-99. *See also Gilmore v. McGann*, No. 23-cv-1467, 2023 WL 6141606, at *1 (3d Cir. Sept. 20, 2023) (holding that the "District Court rightly dismissed Gilmore's First Amendment retaliation claim, because *Bivens* does not encompass such a cause of action") (citing *Egbert*, 596 U.S. at 498)); *McGrath v. Benton*, No. 23-cv-130006, 2024 WL 1928372, at *10 (D.N.J. May 1, 2024) ("the Supreme Court has made it clear that 'there is no Bivens action for First Amendment retaliation'") (citing *Egbert*, 596 U.S. at 498-99)); *Leinheiser v. Decker*, No. 20-cv-4380, 2024 WL 1298880, at *9 (D.N.J. Mar. 27, 2024).

The Court will decline to expand the holding of *Bivens* beyond the confines already established by the United State Supreme Court to encompass the claims asserted by Plaintiff in Counts Four, Fourteen, and Fifteen of the first Amended Complaint. The Court will dismiss the

novel *Bivens* claims for failure to state a claim upon which relief can be granted with prejudice and without leave to amend to assert renewed claims.

### III.    CONCLUSION:

For these reasons, the motions to dismiss filed by Federal Judicial Defendants and former-United States Senator Robert Menendez will be granted.  An appropriate order will be entered.

BY THE COURT:

  /s/ John Milton Younge
Judge John Milton Younge
